SERGIO SEVERO VARGAS, demandante y apelado, *v.* ERNESTO SÁNCHEZ, demandado y apelante.

Número 11564.

*Sometido:* 3 de abril de 1956. *Resuelto:* 28 de febrero de 1957.

*Montilla & Benítez,* abogados del apelante; *E. Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

Se trata de una acción para recobrar tres veces el importe de un reembolso de alquileres que ordenó el Administrador de Estabilización Económica, en virtud de la autorización que le confiere la sección 8 de la Ley de Alquileres Razonables (17 L.P.R.A. sec. 188), y para obtener además la devolución sencilla del sobreprecio que cobró el casero mientras rigió en Puerto Rico la Ley Federal de Inquilinato de 1947 (50 U.S.C.A., App., secs. 1881 et seq.). El Tribunal Superior dictó sentencia declarando con lugar ambas reclamaciones del inquilino y el propietario interpuso el presente recurso de apelación.

En síntesis, los hechos que dieron lugar a este pleito son los siguientes: en septiembre 15 de 1952 el demandado cedió en arrendamiento al demandante, por un canon mensual de ciento cincuenta dólares, un apartamiento que figuraba inscrito como vivienda bajo el programa federal de control de alquileres con un canon máximo de $85.85. En el contrato de arriendo se hizo constar, entre otras cosas, que el arrendatario establecería un salón de belleza en el referido apartamiento. Pero el propietario nunca solicitó modificación alguna en la inscripción del apartamiento, y, al cesar el control federal de alquileres en Puerto Rico en julio 31 de 1953, el mismo quedó inscrito como vivienda con idéntico canon máximo bajo nuestra Ley de Alquileres Razonables.(1) El

---

(1) El art. 9 de dicha ley dispone que: "...en caso de que el control federal de alquileres cese en Puerto Rico y el gobierno federal ceda a la

30 de abril de 1954, el inquilino presentó una querella ante la Administración de Estabilización Económica alegando que el casero, aquí apelante, le estaba cobrando un alquiler en exceso del máximo autorizado. El Administrador llevó a cabo una inspección del local para determinar si el uso predominante era comercial o residencial y, después de citar al casero para una vista, dictó la siguiente orden de reembolso con fecha junio 25 de 1954:

"...se le ordena devolver a su inquilino dentro de los próximos treinta (30) días a partir de la fecha de la presente, el sobreprecio cobrado correspondiente a nueve meses a razón de $64.15 por mes, o sea un total de $577.35. El reembolso podrá efectuarse en un pago total, en pagos parciales, o en crédito contra alquileres futuros inmediatos, en caso de que el inquilino continúe ocupando la propiedad.

"Si transcurrido el plazo de treinta (30) días usted no ha efectuado dicho reembolso o no ha llegado a un acuerdo con su inquilino en cuanto al crédito a concederse contra alquileres futuros, el inquilino tendrá derecho a demandarle judicialmente por tres veces la cantidad cobrada en exceso del alquiler máximo, o por cincuenta dólares ($50), cualesquiera de las dos fuera mayor, más las costas, gastos y honorarios del abogado del demandante."

Ambas partes solicitaron la reconsideración de dicha orden. El casero alegó, entre otras cosas, que el uso real y predominante del local era comercial y no residencial, por lo cual no procedía ordenar un reembolso a base del canon máximo autorizado para el apartamiento como vivienda.

Administración de Inquilinato todos los récords y archivos relacionados con dicho control de alquileres, no será necesario inscribir de nuevo las propiedades ya inscritas bajo el programa federal de control de alquileres, quedando el Administrador facultado para aceptar como alquiler razonable el último fijado a cualquiera de dichas propiedades hasta ese momento, por la agencia federal que estaba a cargo del referido programa..." 17 L.P.R.A. sec. 189. Al terminar el control federal de alquileres en Puerto Rico, todos los récords y archivos de la Oficina Federal de Inquilinato fueron traspasados a la Administración de Estabilización Económica, y, por orden de agosto 1 de 1953, el Administrador de Estabilización Económica aceptó como razonables los alquileres fijados por la Oficina Federal de Inquilinato que estaban en vigor en julio 31 de 1953.

Por otro lado, el inquilino alegó (1) que el reembolso no debía calcularse a partir del 1 de agosto de 1953, como lo hizo el Administrador, sino a partir del 15 de septiembre de 1952; y (2) que el casero le había cobrado, desde agosto 1 hasta diciembre 31 de 1953, un total de $50 por el uso de un garaje que estaba incluído en el alquiler de la vivienda. El Administrador reafirmó su determinación de que el uso real y predominante del local siempre fué para vivienda y de que no tenía facultad para ordenar el reembolso de sobreprecios en alquileres cobrados con anterioridad al 1 de agosto de 1953, pero concedió la devolución de los $50 pagados por el uso del garaje. Por tanto, con fecha julio 22 de 1954, dictó una resolución que en su parte dispositiva reza así:

"...el Administrador, por la presente enmienda su Orden de Reembolso de 25 de junio de 1954 de manera que la cantidad total a devolver al inquilino, sea $627.35. El plazo de treinta (30) días, para efectuar el reembolso, según lo dispone el artículo 8, párrafo (d) de la Ley de Alquileres Razonables (Ley 464 de 25 de abril de 1946) empezará a contarse desde la fecha de esta Resolución."

El casero no interpuso recurso de revisión alguno contra la mencionada orden final de reembolso. Tampoco efectuó el reembolso ni llegó a un acuerdo con el inquilino sobre la forma de pago dentro de los treinta días siguientes a la fecha en que se expidió dicha orden. En consecuencia, con fecha agosto 27 de 1954, el inquilino presentó su demanda en este pleito. Luego de un juicio en los méritos, el tribunal a quo dictó la sentencia que es objeto de este recurso, condenando al casero a pagar: (1) tres veces el importe del reembolso a que se contrae la orden del Administrador—por el sobreprecio cobrado desde agosto 1 de 1953 hasta abril 30 de 1954—; (2) el importe del sobreprecio cobrado desde septiembre 15 de 1952 hasta julio 31 de 1953; y (3) las costas más $300 de honorarios de abogado.

 Ante nos se plantea, en primer lugar, la cuestión

de si el demandado-apelante puede impugnar en esta acción de triple daño la validez de la orden de reembolso que se dictó con fecha julio 22 de 1954, sin haber solicitado nunca la revisión de la orden mediante el procedimiento que establece el art. 7 de la Ley de Alquileres Razonables. 17 L.P.R.A. sec. 187.(²) En el juicio se alegó como defensa que era nula la orden porque el uso real y predominante del local arrendado al demandante era comercial y no residencial. Esa misma contención había sido previamente suscitada ante el Administrador, pero éste determinó que, de hecho, siempre se usó el local para fines residenciales, y así lo hizo constar al dictar su orden de reembolso. El tribunal a quo resolvió que no tenía jurisdicción para considerar la alegación de nulidad de dicha determinación administrativa. Por tanto, se negó a recibir la prueba que ofreció el demandado sobre el particular.

Creemos que el tribunal de instancia actuó correctamente. Basta señalar que a tenor del art. 7 citados: (1) la revisión judicial de los procedimientos habidos ante el Administrador sólo se permite mediante el recurso ante la Sala de San

---

(²) Dicho artículo provee que: "Cualquier regla, reglamento, orden o determinación del Administrador será revisable por la sala de San Juan del Tribunal Superior mediante el correspondiente recurso de revisión, que podrá establecer la parte afectada dentro de los diez (10) días siguientes a la fecha en que fuere promulgada o notificada dicha regla, reglamento, orden o determinación; Disponiéndose, sin embargo, que si el recurso tuviere por única finalidad la revisión de una orden o determinación aumentando o rebajando el canon de arrendamiento, tal recurso podrá establecerse en la sala del Tribunal Superior en que radique la propiedad concernida, confiriéndose por la presente jurisdicción a dichas salas para conocer de tales recursos de revisión.

"Por la presente se confiere jurisdicción exclusiva a la sala de San Juan del Tribunal Superior para determinar la validez de cualquier regla, reglamento, orden o determinación del Administrador.

"La interposición del recurso de revisión a que se refiere esta sección no suspenderá los efectos de la regla, reglamento, orden o determinación del Administrador.

"El Tribunal Supremo de Puerto Rico, en ejercicio de su discreción, podrá revisar mediante certiorari las resoluciones o sentencias que dictare el Tribunal Superior en los recursos de revisión a que se refiere esta sección."

Juan del Tribunal Superior que dispone el estatuto, y sobre todo (2) la Sala de San Juan del Tribunal Superior tiene *"jurisdicción exclusiva para determinar la validez de cualquier regla, reglamento, orden o determinación del Administrador"*. Esta última restricción es la que debemos poner en relieve pues la implicación negativa es clara: ningún tribunal tiene facultad ni jurisdicción para considerar la validez de una regla u orden del Administrador excepto en la forma específica y exclusiva que provee el referido art. 7. De ahí que, en cualquier acción entablada para hacer efectiva una orden de reembolso del Administrador, dicha orden debe considerarse como válida, si la parte afectada no estableció el recurso de revisión antes indicado ante la Sala de San Juan del Tribunal Superior. (3) Así, en *Vélez* v. *López de la Rosa Hnos.*, 75 D.P.R. 251, 256 (1953), resolvimos que, tratándose de una acción de triple daño basada en una orden de reembolso de alquileres:

"...no es necesario que consideremos si tal orden es contraria al artículo 6 [de la Ley de Alquileres Razonables], o si no está justificada por tal disposición estatutaria, ya que la parte demandada está imposibilitada legalmente, y no está en condiciones jurídicas adecuadas, para impugnar colateralmente la validez retroactiva de esa orden en este procedimiento específico del caso de autos. No surge de los autos que los demandados hayan solicitado la revisión de la orden en cuestión ante la Sección de San Juan del anterior Tribunal de Distrito de Puerto Rico, hoy Sala de San Juan del Tribunal Superior de Puerto Rico. Tal corte o tribunal tenía y tiene jurisdicción exclusiva para determinar la validez de una orden o determinación del Administrador... Al no agotar ni recurrir los demandados al remedio previsto en el...artículo 7, ellos no pueden impugnar colateralmente la validez de la orden en un procedimiento independiente como el del caso de autos."

---

(3) Claro está, si el recurso tiene por única finalidad la revisión de una orden o determinación aumentando o rebajando el canon de arrendamiento, la ley dispone que el mismo "podrá establecerse ante la Sala del Tribunal Superior en que radique la propiedad concernida". Véase 17 L.P.R.A. sec. 187.

La exclusividad del procedimiento estatutario de revisión judicial bajo la Ley de Alquileres Razonables, no depende de ningún principio general del derecho administrativo, sino más bien del precepto específico que a ese respecto contiene la ley. No se trata aquí, en efecto, de la regla que exige agotar los remedios administrativos antes de recurrir a los tribunales, pues el propietario en el presente caso no solicita ningún remedio en un foro judicial, sino que es parte demandada en un pleito de triple daño para hacer efectiva la orden administrativa de reembolso de alquileres. Cf. *Smith* v. *United States*, 199 F.2d 377, 381–384 (C.A. 1, 1952). Asimismo resulta innecesario invocar aquí el ambiguo concepto de que una orden administrativa no puede impugnarse "colateralmente". Véase Davis, *Administrative Law* (1951), 604–608, 750–754. Cf. *United States* v. *Ruzicka*, 329 U. S. 287 (1946). La situación en Puerto Rico es sencillamente idéntica hoy día a la que existió bajo la Ley Federal sobre Control de Precios de 1942 (56 Stat. 23, 50 U.S.C.A., App., secs. 901 et seq.) : no puede impugnarse la validez de una orden del Administrador bajo la Ley de Alquileres Razonables, en una acción de triple daño para hacerla efectiva, porque así lo dispone el estatuto expresamente al limitar la jurisdicción de los tribunales en la forma que hemos señalado.

La sec. 7 de nuestra Ley de Alquileres Razonables reproduce sustancialmente las disposiciones de la sec. 205 de la Ley Federal sobre Control de Precios de 1942, por lo menos en lo que concierne al recurso estatutario exclusivo de revisión judicial. La jurisprudencia constante de los tribunales federales reconoció el principio de que, bajo la referida sec. 205, el único foro para impugnar la validez de una orden de reembolso de alquiler era la Corte de Emergencia de Apelaciones. O dicho de otro modo: cualquier cuestión relativa a la nulidad de una orden de reembolso sólo podía plantearse ante dicha Corte de Emergencia mediante el recurso de revisión dispuesto por ley. De ahí que era incontrovertible la

validez de cualquier orden de reembolso en toda acción judicial encaminada a ponerla en vigor. Por ejemplo: en *Woods* v. *Stone*, 333 U. S. 472, 474 (1948), la Corte Suprema de los Estados Unidos resolvió que: "No se ha planteado ni podría plantearse cuestión alguna en este procedimiento relativa a la validez de los reglamentos relevantes y de la orden de reembolso, a base de su retroactividad o por cualquier otro motivo, ya que cualquier impugnación a su validez debió haberse ventilado ante la Corte de Emergencia de Apelaciones..." Véanse además *Bozarjian* v. *Woods*, 175 F.2d 483, 484 (C.A. 1, 1949) y *Mahanor* v. *United States*, 192 F.2d 873, 877–878 (C. A. 1, 1951). ·Cf. *Bowles* v. *Willingham*, 321 U.S. 503 (1944); *Yakus* v. *United States*, 321 U.S. 414 (1944); *Ruiz* v. *Corte*, 71 D.P.R. 384 (1950) y *Pueblo* v. *Tribunal Superior*, 79 D.P.R. 766 (1956). Nada podría ser más significativo a ese respecto que el cambio ocurrido en 1947 en la ley federal. La Ley de Control de Alquileres que fué aprobada en ese año (50 U.S.C.A. App., sec. 1881 y sigtes.) eliminó las disposiciones sobre jurisdicción exclusiva de la Corte de Emergencia de Apelaciones que contenía la Ley Federal sobre Control de Precios de 1942. Los tribunales entonces resolvieron que procedía la impugnación de una orden administrativa sobre alquileres aún dentro de una acción de triple daño o de cualquier otro procedimiento para hacer efectiva dicha orden. Véanse *Smith* v. *United States*, supra; *United States* v. *McCrillis*, 200 F.2d 884, 886–887 (C.A. 1, 1952) y *Washington* v. *Robertson*, 227 F.2d 480, 482 (C.A. 7, 1955). Por el contrario, en Puerto Rico la Sala de San Juan del Tribunal Superior siempre ha conservado "jurisdicción exclusiva" para revisar las determinaciones sobre alquileres del Administrador de Estabilización Económica mediante el recurso especial que establece la sec. 7 de la Ley de Alquileres Razonables. El carácter exclusivo de dicho recurso no fué alterado en forma alguna por las disposiciones de la Ley de la Judicatura de 1952. (4 L.P.R.A. sec. 1 et seq.)

▪▪

▪▪ Según el art. 8 de la Ley de Alquileres Razonables (17 L.P.R.A. sec. 188),(⁴) el inquilino puede requerir directamente al propietario que le reembolse lo pagado en exceso del canon autorizado. Y en ese caso, transcurridos treinta días sin que se haya efectuado el reembolso, surge el derecho a demandar "...por tres veces el importe del reembolso o por cincuenta (50) dólares, cualquiera de estas sumas que fuese la mayor, más las costas y honorarios de abogado..." Por tanto, no es indispensable una orden de reembolso del Administrador para que proceda la acción de triple daño. Cf. *Camuñas* v. *United States*, 212 F.2d 540, 542 (C.A. 1, 1954) y *Woods* v. *Polis*, 180 F.2d 4, 7, (C.A. 3, 1950). Ahora bien, el estatuto concede amplia facultad al Administrador para dictar órdenes de reembolso, tanto en casos de locales que figuren previamente inscritos como en casos en que se reduzca el alquiler incluyendo reembolso al inquilino.

---

(⁴) El citado artículo dispone en parte que:

"(*a*) El propietario que cobre o reciba de su inquilino una cantidad en exceso del alquiler máximo fijado por el Administrador deberá devolver dicho exceso a su inquilino dentro de los treinta (30) días siguientes a ser requerido para ello, por escrito, por el inquilino o por el Administrador.

"(*b*) En aquellos casos en que el Administrador reduzca un alquiler incluyendo reembolso al inquilino, el propietario deberá llevar a efecto el reembolso dentro de los treinta días siguientes a la fecha de la orden de reembolso.

"(*c*) No será necesario el reembolso dentro del período indicado en los incisos (*a*) y (*b*), si dentro de dicho plazo las partes acuerdan o en su defecto y a petición de cualquiera de las partes, el Administrador autoriza que el reembolso se efectúe en forma de pagos parciales futuros. En aquellos casos en que el inquilino continúa en posesión del local, dichos pagos parciales podrán ser deducidos de los alquileres futuros inmediatos.

"(*d*) Si transcurren los treinta (30) días mencionados en los incisos (*a*) y (*b*), sin que el propietario haya efectuado el reembolso o sin que se haya efectuado el acuerdo mencionado en el inciso (*c*), el inquilino podrá incoar contra el propietario una acción por tres veces el importe del reembolso o por cincuenta (50) dólares, cualquiera de estas sumas que fuese la mayor, más las costas y honorarios de abogado del demandante. A los efectos del derecho a demandar por un mínimo de cincuenta (50) dólares se considerará como una sola causa de acción todos los reembolsos existentes a favor del inquilino en el momento de radicarse la demanda y no se reconocerá el derecho a demandar por un mínimo de cincuenta (50) dólares, por cada sobreprecio sujeto a reembolso."

Además es obvio que el Administrador puede actuar *motu proprio* o a instancia del inquilino. Por eso, a nuestro juicio, carece de méritos el argumento del apelante de que la orden de reembolso "era innecesaria... (por lo cual) el tribunal inferior debió haber entrado a considerar el verdadero uso dado al local arrendado". Si el Administrador dicta una orden de reembolso contra un propietario bajo el art. 8 de la ley, la misma no puede ignorarse sin incurrir en los riesgos que apareja la acción de triple daño. Y en todo caso, su validez sólo puede revisarse mediante el recurso que, con carácter exclusivo, establece el estatuto en su art. 7.

Ahora bien, el apelante alega además que él cumplió con la orden de reembolso, dentro del plazo que fija la ley, por lo cual no procede la reclamación de triple daño. El tribunal sentenciador determinó lo contrario y, a nuestro juicio, la prueba practicada en el juicio sostiene dicha conclusión. En efecto, a tenor del art. 8 citado y de la orden de reembolso que se dictó el 22 de julio de 1954, el casero venía obligado a devolver al inquilino el sobreprecio dentro de los treinta días siguientes a la fecha de la orden, o a llegar a un acuerdo dentro del mismo término con el inquilino para hacer el reembolso en pagos parciales futuros. De lo contrario, surgía el derecho a demandar por tres veces el importe del reembolso. Aquí el casero apelante ni efectuó el reembolso ordenado ni llegó a un acuerdo con el inquilino sobre pagos parciales dentro del plazo que fija el estatuto. Se limitó a enviar el 26 de julio de 1954 una carta al Administrador de Estabilización Económica que decía: "Deseo comunicar a usted y por vuestro conducto al inquilino...que (éste) queda autorizado a descontar la suma indicada en la orden de reembolso de la renta futura que le corresponde de pagar". Huelga decir que esto no constituye un acuerdo con el inquilino. Además, la prueba en autos demuestra que el inquilino se mudó del apartamiento arrendado el día 6 de agosto de 1954, por lo cual en ningún caso los pagos parciales

futuros podían "ser deducidos de los alquileres futuros inmediatos", según dispone el inciso (c) del art. 8. Y la demanda en este caso se presentó cinco días después de vencido el término para efectuar el reembolso: en agosto 27 de 1954.([5])

Así, el fallo recurrido debe confirmarse en tanto ordena al propietario que pague *primero*, tres veces el importe del reembolso que el Administrador decretó a base del sobreprecio cobrado desde agosto 1 de 1953 hasta abril 30 de 1954, y *segundo*, las costas y los honorarios de abogado del demandante en esta acción. En cambio, creemos que el demandante no tenía derecho a la devolución del sobreprecio que pagó desde septiembre 15 de 1952 hasta julio 31 de 1953, mientras regía en Puerto Rico la Ley Federal de Alquileres de 1947. 50 U.S.C.A., App., secs. 1881 et seq. Y al resolver lo contrario el tribunal de instancia incidió en error.

La razón es sencilla: la única acción que, al amparo de la sec. 205 de la Ley Federal de Alquileres de 1947,([6]) tenía el inquilino para obtener dicha devolución o triple daño

([5]) Debe añadirse que durante los meses de junio, julio y agosto de 1954, el inquilino no pagó el alquiler pero el casero tampoco exigió que lo pagara. En agosto 24 de 1954, el inquilino saldó los tres meses adeudados, descontando el sobreprecio que había pagado por el mes de mayo del mismo año. Con fecha 30 de agosto, demasiado tarde, el casero envió un cheque por la totalidad del reembolso al demandante, pero éste lo rechazó.

([6]) Dicha sección dispone en parte que: "(a) Cualquier persona que solicite, acepte, reciba o retenga cualquier pago de renta en exceso del máximo prescrito a tenor de las disposiciones de esta ley o de cualquier reglamento, orden o requerimiento al amparo de la misma, deberá pagar a la persona de quien haya solicitado, aceptado, recibido o retenido tal pago (o a los Estados Unidos, como se dispone más adelante) una suma razonable por concepto de honorarios de abogado y las costas que determine el tribunal, más daños predeterminados (*liquidated damages*) en la suma de (1) $50, o (2) no más de tres veces el importe del pago o de los pagos solicitados, aceptados, recibidos o retenidos en exceso del alquiler máximo que legalmente podía ser solicitado, aceptado, recibido o retenido, como determine la corte en su discreción, cualquiera de estas sumas que fuese la mayor: Disponiéndose, que el importe de dichos daños predeterminados (*liquidated damages*) será el importe del sobreprecio o sobreprecios si el demandado prueba que la violación no fué voluntaria ni tampoco ocurrió como consecuencia de haber dejado de tomar precauciones factibles para evitar dicha violación.

".

(según fuere el caso) prescribe al año por disposición expresa de la ley. Y, tratándose de una propiedad que figura inscrita, el tiempo para la prescripción de dicha acción corre desde el día en que el casero incurre en una violación de la ley o de los reglamentos sobre alquileres por haber cobrado un sobreprecio al inquilino. Es decir, aquí las violaciones consistieron en cobrar cánones mensuales en exceso del máximo que fijó la Oficina Federal de Inquilinato al inscribirse la vivienda y la última ocurrió en julio 31 de 1953. De suerte que cualquier derecho del inquilino a reclamar por ese motivo ya se había extinguido por completo antes de presentarse la demanda en agosto 27 de 1954.(⁷)

■ Es cierto que, según la sec. 204 (ƒ) de la ley federal citada, todos los derechos y obligaciones que surgieron mientras rigió en Puerto Rico el control federal de alquileres, subsisten aún después de la fecha en que cesó de estar en vigor

---

"(c) Podrá incoarse una acción para recobrar los daños predeterminados (*liquidated damages*) provistos en esta sección ante cualquier corte federal que posea jurisdicción adecuada, independientemente de la cuantía en controversia, o ante cualquier corte de cualquier estado o territorio que tenga jurisdicción adecuada, *dentro del término de un año después de la fecha de la violación:* Disponiéndose, que si la persona de quien se solicita, acepta, recibe o retiene dicho pago...no inicia la acción indicada en esta sección dentro del plazo de treinta días a contar de la fecha en que ocurre la violación o por cualquier razón no tiene derecho a entablar dicha acción, los Estados Unidos podrán transigir la reclamación que surja de la violación o entablar acción judicial dentro de un año después de la fecha de la violación..." (50 U.S.C.A., App., 1895) (Bastardillas nuestras.)

(⁷) El término prescriptivo de un año que provee la sec. 205 citada normalmente se cuenta desde la fecha del pago de cada sobreprecio en alquileres. De ahí que sólo podía reclamarse por el sobreprecio total pagado dentro del año inmediatamente anterior a la fecha de presentación de la demanda. Véase *Shockley* v. *Winkler*, 196 F.2d 927 (C.A. 5, 1952); *Leimer* v. *Woods*, 196 F.2d 828 (C.A. 8, 1952); *Magnotta* v. *Leonard*, 102 F. Supp. 593 (D.C.Pa. 1952). No obstante, si en violación de los reglamentos sobre alquileres el casero no inscribía la propiedad, el término prescriptivo de un año no se contaba desde la fecha del cobro del sobreprecio, sino desde el momento en que éste violaba la orden de reembolso. *Woods* v. *Stone*, 333 U. S. 472 (1948). En el caso de autos, como ya indicamos: (1) el apartamiento arrendado figuraba inscrito en la Oficina Federal de Inquilinato; (2) se le había fijado un canon máximo; y (3) nunca se dictó una orden de reembolso bajo la ley federal.

dicha legislación, a saber: julio 31 de 1953.([8]) Véase *United States* v. *Moore*, 340 U.S. 616, 620–621 (1950). Por otro lado, la parte demandada no interpuso la defensa de prescripción ante el tribunal sentenciador, sino que se limitó a alegar, sin más explicaciones, que la segunda causa de acción del inquilino (reclamando la devolución sencilla del sobreprecio cobrado en violación de la ley y de los reglamentos federales) no aducía "hechos suficientes para constituir una causa de acción." No obstante, la sec. 205 (*c*) antes transcrita de la Ley Federal de Alquileres de 1947, fija al inquilino un plazo *sustantivo* para incoar una acción contra el propietario por cualquier sobreprecio pagado. No establece un límite procesal que se renuncia al no plantearse la defensa de prescripción en forma específica y oportuna. Por el transcurso de un año prescribe y se extingue por completo el derecho que de otro modo tendría el inquilino, es decir, desaparece totalmente su causa de acción. Véanse *Leimer*. v. *Woods*, 196 F.2d 828, 837–838 ( C.A. 8, 1952) ; *Hogan* v. *Coleman*, 96 N.E. 2d 864 (Mass. 1951), y *Young* v. *Margiotta*, 71 A.2d 924, 926 (Conn. 1950). Cf. *Peña* v. *Eastern Sugar Associates*, 75 D.P.R. 304, 324–325 (1953), y en general: *Developments in the Law, Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1198–1199 (1950).([9])

■ Además sería ocioso tratar de hallar en la sec. 206 (*b*) de la Ley Federal de Alquileres de 1947, una justificación para soslayar la defensa de prescripción en este

---

([8]) La referida sección, según enmendada en 1953 (67 Stat. 24), dispone que al expirar la vigencia de la Ley Federal de Alquileres de 1947, todas las disposiciones de dicha ley, así como los reglamentos, órdenes y determinaciones dictados a tenor con la misma, "serán considerados como si todavía estuvieran en vigor a los fines de sostener cualquier demanda o acción relativa a cualquier derecho o responsabilidad en que se haya incurrido con anterioridad a la fecha de expiración especificada en este párrafo". 50 U.S.C.A., App., 1894 (*f*).

([9]) Sobre la regla indicada, véanse también: *Hart* v. *Leihy*, 122 F. Supp. 510, 511 (D.C. Mo. 1954) ; *Magnotta* v. *Leonard*, 102 F. Supp. 593 (D.C.Pa. 1952) ; *Harding* v. *Parker*, 102 F. Supp. 36 (D.C. Minn. 1952) ; *Riotte* v. *De Somov*, 102 N.Y.S.2d 929 (1951) ; *Stein* v. *Aintablian*, 100 N.Y.S.2d 90 (1950) ; *Kane* v. *Gutmann*, 91 N.Y.S.2d 184 (1949).

caso.([10]) Sin duda, al amparo de esa sección podría ordenarse la restitución o devolución de cualquier sobreprecio que haya cobrado el casero, sin límite alguno de tiempo. A ese respecto poco importa que la orden judicial necesariamente beneficie al inquilino. Y por supuesto, sería inaplicable en ese caso la prescripción de un año que establece la sec. 205. En efecto, según la sec. 206 (*b*), puede dictarse una orden de entredicho, o una orden permanente o provisional de injunction, "*o cualquier otra orden*" para proteger el interés público que allí se indica: evitar cualesquiera violaciones de la ley y de los reglamentos u órdenes sobre alquileres. Una orden de restitución o devolución del sobreprecio cobrado ilegalmente por un casero, constituye precisamente una medida para resturar el *statu quo ante*, protegiendo así en forma más efectiva dicho interés público. Por eso, un tribunal puede adoptarla al aplicar la sec. 206 (*b*), teniendo en cuenta sobre todo el amplio poder que por tradición poseen los jueces para forjar remedios eficaces y adecuados en los procedimientos que se derivan del derecho de equidad.([11]) Pero dicha orden de restitución o devolución

---

([10]) La sec. 206 (*b*) dispone lo siguiente: *"Si a juicio del Presidente,* cualquier persona ha cometido o se propone cometer próximamente cualesquiera actos o prácticas que constituyen o constituirán una violación de cualquier disposición de esta ley, o de cualquier reglamento u orden emitido a tenor con la misma, *los Estados Unidos podrán solicitar de cualquier tribunal federal, estatal o territorial que posea jurisdicción adecuada una orden que prohiba dichos actos o prácticas o una orden que obligue a cumplir con las referidas disposiciones,* y, si se demuestra que una persona ha cometido o se propone cometer próximamente cualesquiera de los referidos actos o prácticas, *deberá dictarse sin fianza una orden permanente o provisional de injunction, una orden de entredicho, o cualquier otra orden."* (50 U.S.C.A., App., 1896 (*b*).) (Bastardillas nuestras.)

([11]) Cf. Chafee y Pound, *Cases on Equitable Relief Against Torts* (1933) 246 y sigtes., 281 y sigtes., 438–479; 1 Pomeroy, *A Treatise on Equity Jurisprudence,* 56–91, 227 y sigtes.; Hanbury, *Modern Equity* (6a ed., 1952) 174, 577–599; Pound, *An Introduction to the Philosophy of Law* (1922) 100–143; Eder, *A Comparative Survey of Anglo-American and Latin-American Law* (1950) 77–85; Rabasa, El Derecho Angloamericano (1944) 136–153, 208–215. Sobre el concepto de la equidad, considerado desde un punto de vista histórico y también analítico, véanse los siguientes artículos de Castán Tobeñas: La Equidad y sus Tipos His-

del sobreprecio constituye siempre un remedio de carácter discrecional y subsidiario: sólo puede decretarse, si las circunstancias lo justifican, dentro de un pleito incoado *por los Estados Unidos* para la protección del interés público y nunca a instancias de un inquilino en una acción privada. Así aparece con claridad en el texto de la sec. 206 (*b*) y también en la jurisprudencia sentada por los tribunales federales. Véanse *United States* v. *Moore*, 340 U.S. 616 (1950); *Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946).([12])

*Por los motivos expuestos se modifica la sentencia objeto de este recurso de apelación, y se ordena al demandado-apelante a pagarle al demandante la cantidad de $1,882.05 es decir, tres veces el importe del reembolso consignado en la orden que dictó el Administrador de Estabilización Económica, más las costas y $300 de honorarios de abogado.*

El Juez Asociado Sr. Marrero no intervino.

---

tóricos, 187 Rev. Gen. de Legislación y Jurisprudencia 697 (1950), y La Idea de Equidad y su Relación con otros Conceptos, Morales y Jurídicos, Afines, 188 *ibid.* 217 y 361 (1950).

([12]) Al respecto, véanse además: *Camuñas* v. *United States*, 212 F.2d 540, 541–542 (C.A. 1, 1954); *United States* v. *Owens*, 207 F.2d 725 (C.A. 6, 1953); *United States* v. *Sheff*, 194 F.2d 596, 597 (C.A. 9, 1952); *United States* v. *Pileggi*, 192 F.2d 878 (C.A. 2, 1951); *Mahanor* v. *United States*, 192 F.2d 873, 877 (C.A. 1, 1951); *Orenstein* v. *United States*, 191 F.2d 184 (C.A. 1, 1951); *Jackson* v. *Woods*, 182 F.2d 338 (C.A. 5, 1950) y *Woods* v. *Wayne*, 177 F.2d 559 (C.A. 4, 1949).