ARTHUR EISELE, demandante y recurrido, v. CARMEN ORCASITAS, demandada y recurrente.

Número: 564   Resuelto: 8 de enero de 1962

*Jorge Benítez Gautier,* abogado de la recurrente; *José T. Marrero Rivera,* abogado de el recurrido.

Sala integrada por el Juez Asociado señor Hernández Matos como Presidente Accidental de Sala y los Jueces Asociados señores Santana Becerra y Blanco Lugo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La Administración de Estabilización Económica ordenó a la recurrente Carmen Orcasitas devolver al recurrido Eisele, la suma de $528.00 de alquileres cobrados en exceso. Al no cumplir ella, el inquilino interpuso demanda en el Tribunal Superior que fue radicada el 22 de diciembre de 1956, reclamando $1,584 o tres veces dicha cantidad.

En procedimiento directo de revisión, Caso CS 56-4128, la casera impugnó ante el Tribunal Superior la orden de reembolso y la Sala de San Juan anuló dicha orden por sentencia de 3 de octubre de 1957. En el recurso de *Certiorari* 2420 interpuesto por Eisele, este Tribunal, en 28 de junio de 1960 anuló la referida sentencia como resultado de lo decidido en *Peñagarícano* v. *Tribunal Superior, Nadal Skerret, Interventor,* 81 D.P.R. 877.

El presente caso se sometió a la Sala sentenciadora con los siguientes hechos estipulados por las partes:

Durante 24 meses, entre agosto 31 de 1953 y agosto 31 de 1955 la recurrente estuvo cobrando al inquilino un sobreprecio de $22 mensuales, en total $528. El canon autorizado era de $47.00 y ella cobraba $69. Durante 9 meses a partir de agosto 31 de 1955 el inquilino estuvo depositando solo $40, $7 menos del canon legal, la suma de $63.00. En mayo de 1956 el Administrador autorizó un alquiler de $68.50 que fue pagado. Desde enero 23 de 1956 el inquilino había radicado una querella ante el Administrador y en abril 14 hizo directamente un requerimiento de reembolso a la casera. En 23 de agosto de 1956 el Administrador expidió la orden de reembolso de los $528. El inquilino desocupó en julio de 1957 y adeudaba $188.10.

La Sala sentenciadora declaró extinguida la acción de triple daño. Ese problema no está ante nos en este recurso traído por la casera. Procedió, sin embargo, a dictar sentencia contra ella por $277.90 por el reembolso sencillo de $528, menos $188.10 adeudados al desocupar y los $63 no pagados del canon original.[1]

Debemos empezar por fijar el concepto de la sentencia. No se trata de "daños" triples ni sencillos. Se trata de un *reembolso* o *restitución* al inquilino de dinero que se le cobró en violación de la ley, y que en ley siempre debió pertenecerle.

El problema a resolver es si dentro de las disposiciones de la Ley de Alquileres Razonables el inquilino puede obtener una sentencia judicial restituyéndole ese dinero, y en último extremo, el problema sería si él necesita de la mecánica de esa ley para hacer valer judicialmente este derecho.

La cuestión presente es una secuela inevitable de la decisión de *Nadal Skerret*. La dejamos expresamente sin resolver en ese caso por cuanto allí se trataba de la revisión

---

[1] Debió ser por $276.90. Aunque la demanda era por triple daños, habiéndose estipulado los hechos y no siendo necesario prueba adicional o distinta para resolver lo pertinente al derecho del inquilino a un reembolso sencillo, desde el punto de vista procesal la Sala actuó apropiadamente. Regla 44.3 de Procedimiento Civil (1958).

directa de una orden del Administrador, y no de una acción judicial del inquilino. Se presentó, aunque tardíamente, en *Banco Popular* v. *Tribunal Superior, Margarita Domínguez, Interventora,* 82 D.P.R. 242. También la dejamos expresamente sin resolver, por razones procesales. Ahora tenemos que decidirla. ([2])

En 25 de abril de 1946 se aprobó nuestra Ley de Alquileres Razonables, Ley 464—17 L.P.R.A. secs. 181–218—. Siguiendo el patrón federal ya establecido de la sección 205 (e) de la Ley de Emergencia de Control de Precios de 1942, 56 Stat. 23, ([3]) que concedía al inquilino, por todo resarcimiento en casos de sobreprecio, *daños líquidos* por tres veces el sobreprecio cobrado más honorarios y costas en una acción judicial que el inquilino o los Estados Unidos debían interponer dentro del año de la violación o cobro del exceso, nuestro Legislador dispuso de manera similar en el art. 8 de la Ley 464, según lo aprobó originalmente. ([4])

Sin embargo, sin que el Congreso hubiera hecho cambio alguno en este sentido al estatuto federal, y cuando apenas si nuestro estatuto llevaba algunos meses de estar en vigor, en 21 de marzo de 1947 se presentó por el Senador Géigel Polanco, autor del proyecto de la Ley 464, el proyecto 894 del Senado que vino a ser la Ley 421 de 14 de mayo de 1947,

---

([2]) El antecedente estatutario y doctrinal del problema fue expuesto por el ponente en la decisión que preparó para el Tribunal en *Nadal Skerret.* Partiremos de ese fondo ya conocido para evitar innecesaria repetición.

([3]) Sec. 205 de la ley federal de inquilinato (Housing and Rent Act) de 1947, 50 USCA, App., sec. 1895, 61 Stat. 199.

([4]) "Artículo 8.—Si el propietario cobrare o recibiere un alquiler en exceso del alquiler básico o del alquiler razonable fijado por el Administrador, el inquilino podrá entablar una acción civil contra el propietario, por daños y perjuicios, ya sea por la suma de cincuenta (50) dólares o por el triple de la cantidad en que el alquiler pagado excediere el alquiler aplicable, cualquiera de estas sumas que fuere la mayor, más las costas y honorarios de abogado del procedimiento. La reclamación sólo podrá incoarse dentro del año siguiente a la fecha en que se hubiera pagado el alquiler; *Disponiéndose,* que tales reclamaciones se limitarán a alquileres devengados y pagados con posterioridad a la fecha de vigencia de esta Ley."

ley ésta que alteró sustancialmente el Art. 8 original y la política pública en él manifestada.

¿A qué pudo deberse este cambio súbito de norma legislativa? El historial de la Ley 421 de 1947, según anotamos en *Nadal* (escolio 6), no expresa razón alguna.

Ocurrió, no obstante, un hecho que arroja bastante luz y ofrece una explicación lógica. En junio 3 de 1946, treinta y nueve días de aprobada la Ley 464, el Tribunal Supremo de Estados Unidos emitió su decisión en *Porter* v. *Warner Co.*, 328 US 395. Bajo lo dispuesto en la sec. 205(a) de la Ley de Control de Precios de 1942, ([5]) el Administrador federal instituyó una acción de *injunction* para que se prohibiera al casero seguir cobrando sobreprecios en violación de la ley. Posteriormente enmendó la demanda de *injunction* solicitando, además, que se ordenara a la querellada entregar a los inquilinos las cantidades cobradas en exceso, excepto a aquellas personas que ya hubieran comenzado una acción bajo la sec. 205(e), [205 de 1947; Art. 8 original Ley 464]. La corte de distrito concedió el *injunction* pero denegó la devolución. Ya en *Nadal* expusimos las razones de política pública en la aplicación de estos estatutos que adujo el Tribunal Supremo al resolver que procedía ordenar la devolución a los inquilinos, dentro de esa acción de *injunction* traída por el Administrador, del sobreprecio cobrado. Aclaró finalmente el Tribunal,—328 US, a la pág. 402, según se tradujo en *Nadal*, 81 D.P.R. a la pág. 888,— lo siguiente:

"Devolución (*restitution*) que cae bajo la jurisdicción equitativa, es compatible con, y difiere grandemente de, los daños y penalidades que puedan concederse bajo la sección 205(e) ... [citas]. Cuando el Administrador pide la *devolución* él no solicita que la corte conceda *daños estatutarios* al comprador o inquilino, o que se le pague a dicha persona parte de las penalidades que acrecen al Tesoro de Estados Unidos en un pleito del Administrador bajo la sección 205 (e). Más bien, él le

([5]) Sec. 206 Ley de Inquilinato de 1947, 50 U.S.C.A., App., sec. 1896(b), 61 *Stat.* 199.

pide a la corte *que actúe en el interés público restableciendo el status quo* ordenando la devolución de aquello que legalmente pertenece al comprador o inquilino." (Énfasis adicionado.) [1]

En *United States* v. *Moore*, 340 US 616 (1951), se ratificó la decisión de *Porter* y se amplió su alcance. Resuelto bajo la Ley de Inquilinato de 1947, el Administrador federal interpuso similar acción de *injunction*, pidió *daños estatutarios* por tres veces y además, la devolución al inquilino del sobreprecio. No procedió el *injunction* porque en el interín el control de alquileres cesó en aquella localidad. La corte de distrito concedió los *daños líquidos o estatutarios*, y también la *devolución* del sobreprecio. La Corte de Apelaciones fue del criterio que procedían los daños estatutarios, pero no procediendo el *injunction*, entendió que no había lugar a ordenar la devolución. Revocándola, el Tribunal Supremo sostuvo que dicha orden de *devolución* podía ser dictada por la corte de distrito en su condición de corte de *equidad*, como una *orden*, bajo la sec. 206(b) (1947) para hacer efectivo el cumplimiento de la ley durante el tiempo en que se cobraron los sobreprecios. En *Nadal* recopilamos y comentamos decisiones al efecto de que el período de caducidad de un año dispuesto para la acción de *daños triples* estatutarios no era aplicable a la devolución o reintegro del sobreprecio. Procede aclarar, lo que también hicimos en *Nadal Skerret,* que en estos casos la facultad de ordenar judicialmente un reembolso se reconoció en acciones que fueron interpuestas por el Administrador invocando éste la jurisdicción equitativa de las cortes federales. También procede recordar que las decisiones estatales que citamos que no reconocían al inquilino mismo tal acción aplicaban la propia ley federal, no aplicaron estatutos locales que pudieran disponer de distinta manera. ([6])

---

([6]) A pesar de ello Massachusetts reconoció localmente una acción judicial al inquilino para obtener la devolución del sobreprecio,—*Shread* v. *Breton,* 132 N.E.2d 177,—bajo la propia Ley Federal de Inquilinato. Y véase la ilustrativa opinión de New Jersey—*Brinkmann* v. *Urban Realty*

Los razonamientos asaz convincentes del Tribunal Supremo expuestos en la decisión de *Porter* sobre la política pública detrás de la devolución del sobreprecio para beneficio del inquilino como un medio eficaz de hacer cumplir la legislación sobre el control de precios y de hacerla efectiva, aun cuando la ley misma no concedía en términos expresos una acción judicial en tal sentido, indudablemente indujeron la enmienda de mayo 14 de 1947 al Art. 8 de la Ley 464. Probablemente se acudió aquí a la acción legislativa porque no siendo nuestros tribunales cortes de equidad al estilo en que lo son las cortes federales, el propósito no se lograba de la manera sancionada en *Porter*, y después en *Moore*. Se explica que en la aplicación de la legislación local se desearan normas de efectividad similares a la de la legislación federal, por cuanto ésta seguía rigiendo aquí para las viviendas—Art. 4, Ley 464—y por otra parte la ley local cubría unidades de alquiler no incluidas en la legislación del Congreso.([7])  ▮

En efecto, al redactar la exposición de motivos de la Ley 464, nuestra Asamblea Legislativa expresó que el propósito de la misma era complementar las disposiciones sobre inquilinato de la Ley de Emergencia para el Control de Precios de 1942, "en su aplicación a Puerto Rico, *con iguales normas* y el *mismo propósito* de evitar la especulación en los alquileres, en aquellos aspectos del problema del inquilinato que revisten interés público en Puerto Rico, y que no están cubiertos por la Ley Federal, tales como el arrendamiento de casas y edificaciones que se usan para negocios, y propósitos comerciales e industriales." (Énfasis adicionado.) Así, a raíz de lo

*Co.*, 89 A.2d 394—en donde ante una situación similar surgida bajo la Ley Nacional de Hogares que reglamentaba el alquiler en viviendas financiadas por dicha ley, y que daba un remedio al inquilino en casos de sobreprecio, se reconoció el derecho de éste a reclamar judicialmente la devolución o reintegro del exceso, bajo el principio del enriquecimiento injusto. Cf: *Jenkins* v. *Kaplan*, 148 A.2d 33.

([7]) La reglamentación federal sobre control de alquileres estuvo aquí en vigor hasta el 31 de julio de 1953.

decidido en *Porter*, el Art. 8 originalmente aprobado se enmendó a partir del 14 de mayo de 1947 para disponer ahora en primer término (*a*) que el propietario que cobrara o recibiera de su inquilino una cantidad en exceso del alquiler máximo fijado por el Administrador *debería devolver dicho exceso* a su inquilino dentro de los 30 días siguientes a ser requerido para ello, por el inquilino, o por el Administrador; (*b*) que en los casos en que el Administrador redujera un alquiler incluyendo reembolso al inquilino, el propietario debería llevar a efecto el reembolso dentro de 30 días siguientes a la fecha de la orden de reembolso. Debe observarse con respecto a la obligación del propietario de devolver el exceso cobrado que no se impuso término alguno de caducidad en particular. Es significativo que tampoco se exigió, imprescindiblemente, una orden previa del Administrador para que el inquilino pudiera requerir al propietario el reembolso. También es significativo que en casos en que el Administrador ejerciere la acción de daños líquidos, se le autorizó a cobrar administrativamente la suma envuelta, pagar al inquilino el *reembolso sencillo*, trasmitiendo sólo la diferencia al Tesoro Público.

Cierto es que el Art. 8 no dispuso expresamente que el inquilino podría incoar una acción judicial para hacer efectivo el sobreprecio si el propietario no lo efectuaba voluntariamente al igual que en lo referente al daño estatutario. La legislación federal tampoco contenía una disposición semejante; menos aún, no hacía referencia alguna a una devolución o reintegro. No obstante, hemos visto como dicha legislación fue judicialmente interpretada para permitir una sentencia ordenando la devolución del sobreprecio pagado como un medio de hacer efectiva la política pública del Congreso.

Distinta a la federal, nuestra legislación reconoce expresamente, a partir de la enmienda de 1947, el derecho de un inquilino a que su casero le devuelva el exceso que le hubiera cobrado en violación de la ley. Le concedió ese derecho

sustantivo y el mismo no debe quedar derrotado porque el Legislador no dijera expresamente que podía acudir a una corte de justicia a hacerlo efectivo. *Ubi jus ibi remedium.* Ya dijimos en *Nadal* que la acción por tres veces el sobreprecio es de carácter punitivo, como un medio de desalentar la violación de la ley mediante castigo pecuniario. Pero fue limitada dicha acción al sobreprecio pagado dentro del año inmediatamente anterior a su radicación en corte, como un medio también de evitar que el inquilino permitiera la violación indefinidamente para luego hacer una ganancia de la situación. El derecho a meramente resarcirse de lo que se le extrajo en violación de la ley no puede ser en justicia menos dudoso ni estar en posición más desventajosa que el derecho, por vía de castigo, a obtener daño triple. Porque el inquilino pierda su acción de triple daño por caducidad de la misma, como determinó la Sala en este caso, cosa ésta propensa a ocurrir en vista de la complejidad de la reglamentación y de que no siempre se reconoce a tiempo con entera claridad si se ha estado o no pagando un sobreprecio, no debe haber razón para que no pueda hacer efectivo su derecho a resarcirse de lo que es suyo ya que nunca lo debió haber pagado. ■

Estamos enteramente de acuerdo con el criterio expresado por la Sala sentenciadora. Considerada la política pública detrás de la Ley de Alquileres Razonables, para darle cabal efectividad y hacer cumplir sus propósitos, procede reconocer en las cortes la facultad de dictar una sentencia judicial haciendo efectivo el importe de un reembolso de sobreprecios pagados en exceso, reembolso éste reconocídole por ley al inquilino. Puede considerarse como una acción corriente de cobro de dinero o de restitución de lo indebidamente pagado, o para evitar un enriquecimiento injusto e ilegal. Se cumplen mejor los propósitos de la Ley con que el casero no retenga el fruto de su incumplimiento de la misma. ■

Debemos aclarar, para que no haya confusión, que lo anteriormente dicho no debe entenderse en el sentido de que los tribunales judiciales tienen facultad en primera instancia para determinar, por vía de una restitución, qué es un alquiler razonable que debe cobrarse, función ésta que en primera instancia es de la exclusiva incumbencia del Administrador. El requerimiento de devolución debe surgir bien de una orden a tal efecto dictada por el Administrador, o bien de un alquiler ya fijado por el Administrador, o por la propia Ley. Tampoco podrá el inquilino obtener la devolución de aquel pago en exceso que le sirva de base para obtener el triple daño líquido estatutario.

*La sentencia recurrida será confirmada en lo que respecta a este recurso.*