ALBERTO BACHMAN, demandante y recurrente, *v.* JUAN T. PEÑAGARÍCANO, en su carácter de ADMINISTRADOR DE ESTABILIZACIÓN ECONÓMICA DE PUERTO RICO, demandado y recurrido; MANUEL MARTINÓ RUIDÍAZ, inquilino-interventor.

*Número:* 95     *Resuelto:* 28 de diciembre de 1962

42

*Jorge Benítez Gautier,* abogado del recurrente; *Nieves M. Agostini de Torres, Miguel Franquiz Ventura,* y *José Iglesias La Cruz,* abogados del recurrido; *Amancio Arias Cestero,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El casero Alberto Bachman cobró a su inquilino Manuel Martinó Ruidíaz un sobreprecio de $25.00 mensuales desde el año 1955 hasta el mes de enero de 1960. En 23 de septiembre de 1960, el inquilino, por conducto de su abogado, envió al casero un requerimiento de reembolso de la suma de $1,325.00 por concepto de cincuenta y tres meses de sobreprecio a razón de $25 mensuales. Copia de dicho requerimiento fue remitido a la Administración de Estabilización Económica. El arrendador Bachman ofreció al inquilino pagarle $100 como reembolso del sobreprecio cobrado durante el año anterior a la fecha en que podría incoarse una demanda de daños triples. Esa oferta fue rechazada por el inquilino y el casero procedió a consignar la suma de $100 en la Sala de San Juan del Tribunal de Distrito con fecha 13 de octubre de 1960.

El 4 de octubre de 1960 la Aministración había notificado a las partes que habría de celebrar una vista administrativa el día 18 del mismo mes y año, en relación con la reclamación del inquilino. En dicha vista el casero admitió que había cobrado un exceso de $25 mensuales sobre el canon legal durante el período que cubre la reclamación del inquilino. Sin embargo alegó que el Administrador carecía de jurisdicción para dictar una orden de reembolso: (1) porque la ley contempla la emisión de un solo requerimiento de reembolso en cada caso ya fuere por el inquilino o por el Administrador y ya el inquilino había ejercido su derecho en este caso, (2) porque la materia se encontraba sometida al Tribunal de Distrito en el caso de la consignación que está aun pendiente, y (3) porque al tiempo de expedirse el segundo requerimiento ya había prescrito toda posible acción de daños triples por parte del inquilino.

En 10 de enero de 1961 el Administrador emitió un Requerimiento de Reembolso montante a la suma de $1,325. No conforme el casero radicó Recurso de Revisión ante el Tribunal Superior, Sala de San Juan, dictando éste, en 28 de agosto de 1961, la siguiente sentencia:

"Admitiendo el recurrente que él cobró al interventor el sobreprecio cuyo reembolso le requirió el Administrador recurrido, ningún fin práctico se cumpliría con determinar si el Administrador tenía o no jurisdicción para emitir la orden de reembolso después que el interventor había hecho al recurrente el mismo requerimiento, puesto que tal admisión cumpliría idéntico propósito, dentro de la acción judicial que pueda incoarse por triple daño o en cobro del sobreprecio sencillo, que el que resultaría de la confirmación de dicha orden: su inexpugnabilidad frente a un ataque colateral con miras a relitigar el hecho admitido."

Expedimos un auto de *certiorari* para revisar dicha sentencia con el propósito de dejar esclarecido el planteamiento hecho por el casero sobre la emisión de dos Requerimientos de Reembolso, uno hecho por el inquilino y el otro hecho por el Administrador. ■

"La cuestión a resolver, —dice el propietario en su solicitud de certiorari—que fue soslayada por el Honorable Tribunal Inferior, es si una vez que un inquilino pone en movimiento la maquinaria de su causa de acción, haciendo a su casero el requerimiento de reembolso contemplado por la Sec. 8(a) de la Ley de Alquileres Razonables, recibiendo de dicho casero la oferta de pago que éste considera legal, la cual rehusa el inquilino, motivando así una consignación judicial, puede posteriormente, conjuntamente con el Administrador de Estabilización Económica, echar a un lado dicho requerimiento y dichas posteriores actuaciones del casero como si nunca hubieren ocurrido e insistir y conseguir que el Administrador expida subsiguientemente un segundo requerimiento de reembolso por la misma cantidad."

El casero no tiene razón. En *Peñagarícano, Admor*. v. *Tribl. Superior*, 81 D.P.R. 877, dijimos a la pág. 894, lo siguiente:

"El art. 5(d) faculta al Administrador para dictar . . . 'aquellas reglas, . . . *órdenes* y determinaciones que estime necesarios o propios,' a fin de llevar a cabo los propósitos de la ley. Independientemente del hecho de si un caso llega o no a la etapa en que es necesario acudir a la acción judicial, es incuestionable que en aquellos casos en que de acuerdo con la ley procede conceder un reembolso, el Administrador no sólo tiene facultad sino que viene obligado a dictar una orden de reembolso cubriendo cualquier alquiler cobrado por un casero en exceso del autorizado, como un medio de hacer cumplir los propósitos de la ley contenidos en los párrafos (*a*), (*b*) y (*c*) del art. 8 referentes a la devolución o reembolso administrativo, sin cuyo trámite previo no puede acudirse a la acción judicial. El monto específico a obtenerse por vía de triple daño no cae bajo la esfera del Administrador, y corresponde a las cortes determinarlo a la luz de la disposición prescriptiva. Indudablemente que los tribunales no pueden conceder el reembolso triple de un sobreprecio pagado con anterioridad al año inmediatamente anterior a la fecha de la interposición de la demanda, que es el punto de partida correcto para contar dicho año, y no la fecha en que el Administrador dicte una orden de reembolso. Como cuestión de hecho el Administrador no podría determinar a la fecha en que dicta una orden de reembolso qué sobreprecios estarían prescritos en caso de que hubiera que acudirse a la acción judicial, desconociendo cuándo ha de interponerse ésta. A la luz de lo expuesto la determinación del tribunal a quo, modificando las órdenes de reembolso para limitar éstos a los sobreprecios cobrados dentro del año inmediatamente anterior a la fecha de dichas órdenes, no fue correcta en ley."

Es conveniente aclarar ahora, a fin de evitar una interpretación errónea del caso de *Peñagarícano*, que cuando dijimos en el mismo que la emisión de una orden de reembolso por el Administrador era un trámite previo indispensable para poder acudirse a la acción judicial, estábamos limitando la doctrina a los hechos específicos de dicho caso, sin que ello

implicara en forma alguna que en todos los casos en que se cobrase un canon en exceso del legal, fuera indispensable que el inquilino obtuviera del Administrador una orden de reembolso antes de acudir a la reclamación judicial del sobreprecio. Hay situaciones en que es indispensable la emisión de dicha orden de reembolso, como por ejemplo, cuando el alquiler se ajusta automáticamente al 1ro. de octubre de 1942 o cuando el Administrador dicta una orden provisional aumentando o fijando al alquiler máximo hasta que el caso se resuelva en definitiva. Art. 6 de la Ley. En *Vargas* v. *Sánchez*, 79 D.P.R. 801, dijimos que el estatuto concede amplia facultad al Administrador para dictar órdenes de reembolso, tanto en caso de locales que figuren previamente inscritos como en casos en que se reduzca el alquiler incluyendo reembolso al inquilino y que además el Administrador puede actuar *motu proprio* o a instancia del inquilino. En el mismo caso también habíamos dicho que no es indispensable una orden de reembolso del Administrador para que proceda la acción de triple daño. Se recordará además que en el caso de *Vargas* el inquilino demandó por triple daño y además por el reembolso sencillo cobrado en exceso por el casero. Resolvimos que la única acción que, al amparo de la Sec. 205 de la Ley Federal de Alquileres de 1947 tenía el inquilino era la de triple daño con el término prescriptivo establecido por el propio estatuto y que por lo tanto no procedía su reclamación por el reembolso sencillo. Si esto era así o no bajo nuestra ley local de inquilinato, lo dejamos abierto en el caso de *Peñagarícano*, donde dijimos: "Ello aconseja advertir que no resolvemos ahora ni anticipamos juicio en forma alguna, lo que se dejará para la ocasión apropiada, en cuanto a si bajo lo dispuesto en los párrafos (*a*) y (*b*) del Art. 8 el inquilino puede o no reclamar judicialmente el importe sencillo de los sobreprecios cobrados, o de interponer la acción de daños, si puede o no reclamar el exceso sencillo pagado más allá del año prescriptivo como

una segunda causa de acción, o si por el contrario, en caso de que el propietario se niegue a devolver administrativamente, su único remedio es el reembolso judicial triple, pero con la limitación prescriptiva." (Págs. 895, 896.) ■

Posteriormente en *Eisele* v. *Orcasitas*, 84 D.P.R. 360, (1962) resolvimos que bajo nuestra ley el inquilino tiene una causa de acción para reclamar judicialmente el reembolso sencillo. Nos expresamos entonces así:

"Cierto es que el Art. 8 no dispuso expresamente que el inquilino podría incoar una acción judicial para hacer efectivo el sobreprecio si el propietario no lo efectuaba voluntariamente al igual que en lo referente al daño estatutario. La legislación federal tampoco contenía una disposición semejante; menos aun, no hacía referencia alguna a una devolución o reintegro. No obstante, hemos visto como dicha legislación fue judicialmente interpretada para permitir una sentencia ordenando la devolución del sobreprecio pagado como un medio de hacer efectiva la política pública del Congreso.

"Distinta a la federal, nuestra legislación reconoce expresamente, a partir de la enmienda de 1947, el derecho de un inquilino a que su casero le devuelva el exceso que le hubiera cobrado en violación de la ley. Le concedió ese derecho sustantivo y el mismo no debe quedar derrotado porque el Legislador no dijera expresamente que podía acudir a una corte de justicia a hacerlo efectivo. *Ubi jus ibi remedium.* Ya dijimos en *Nadal* que la acción por tres veces el sobreprecio es de carácter punitivo, como un medio de desalentar la violación de la ley mediante castigo pecuniario. Pero fue limitada dicha acción al sobreprecio pagado dentro del año inmediatamente anterior a su radicación en corte, como un medio también de evitar que el inquilino permitiera la violación indefinidamente para luego hacer una ganancia de la situación. El derecho a meramente resarcirse de lo que se le extrajo en violación de la ley no puede ser en justicia menos dudoso ni estar en posición más desventajosa que el derecho, por vía de castigo, a obtener daño triple. Porque el inquilino pierda su acción de triple daño por caducidad de la misma, como determinó la Sala en este caso, cosa ésta propensa a ocurrir en vista de la complejidad de la reglamentación y de que no siempre

se reconoce a tiempo con entera claridad si se ha estado o no pagando un sobreprecio, no debe haber razón para que no pueda hacer efectivo su derecho a resarcirse de lo que es suyo ya que nunca lo debió haber pagado."

También aclaramos en dicho caso que el inquilino no podrá obtener la devolución de aquel pago en exceso que le sirva de base para el triple daño líquido estatutario. ■

En la etapa en que se encuentran los procedimientos habidos en este caso todavía no se ha acudido a la acción judicial para recobrar el canon sencillo pagado en exceso o para reclamar triple daño. Desconocemos, por tanto, la acción que habrán de seguir el inquilino o el Administrador bajo la interpretación que hemos dado a nuestra ley. Nada hay en la ley que impida al Administrador, una vez tenga conocimiento de que el casero está cobrando un canon en exceso del máximo legal, requerir al casero para que devuelva el exceso al inquilino. El requerimiento de reembolso, según la Ley de Alquileres Razonables únicamente afecta el término que se le concede al casero para efectuar el reembolso antes de que pueda acudirse a la reclamación judicial. Sabido es que la fecha en que se paga el sobreprecio y no la del requerimiento, es la que determina la prescripción de la acción de triple daño. En verdad no vemos cómo un segundo requerimiento de reembolso pueda lesionar en forma alguna los derechos del casero pues como ya hemos dicho, el requerimiento tiene el efecto de conceder un período de tiempo al casero para efectuar el reembolso, el que una vez efectuado, impide la reclamación judicial de triple daño. A lo sumo, y sin que así lo estemos resolviendo ahora, el segundo requerimiento tal vez surtiría el efecto de concederle un período adicional al casero para reembolsar el exceso cobrado al inquilino. Por lo menos, lo razonable parecería ser que al emitirse el segundo requerimiento de reembolso al casero se le concediera a éste el tiempo que señala la ley para efectuarlo antes de iniciarse la acción judicial. ■

Por otra parte, no podemos convenir con el argumento del casero al efecto de que el inquilino estaba obligado a litigar su causa de acción, dentro del procedimiento de consignación iniciado por él ante el Tribunal de Distrito. La ley concede un período de tiempo al casero para efectuar el reembolso y ese plazo solamente es prorrogable si las partes acuerdan o el Administrador autoriza, a petición de cualquiera de ellas, que el reembolso se efectúe en forma de pagos parciales futuros. Art. 8(c) de la Ley. Transcurrido el término legal sin que el casero haya efectuado el reembolso y sin que se haya efectuado el acuerdo de la prórroga antes mencionada, el inquilino o el Administrador, en su caso, quedan autorizados para recurrir a la acción judicial correspondiente. Ése es el procedimiento que prescribe la Ley de Alquileres Razonables y no debe haber una desviación tan sustancial del mismo, como el seguido por el casero en este caso y que consistió, no en acordar que el reembolso se efectuase en forma de pagos parciales futuros, sino en negar que viniera obligado a reembolsar la suma cobrada en exceso, ofrecer el pago de $100 y ante el rechazo de dicha oferta, consignar la ameritada suma en el Tribunal de Distrito, consignación ésta que se hizo después que el Administrador había señalado una vista para determinar si procedía emitir una orden de reembolso. La orden de reembolso librada por el Administrador era revisable por la Sala de San Juan del Tribunal Superior de Puerto Rico, a la cual se le concedió jurisdicción exclusiva para entender en dicha revisión. Art. 7 de la Ley (17 L.P.R.A. sec. 187). Cabe la probabilidad de que en el procedimiento de consignación iniciado por el casero, se planteara la cuestión de la legalidad de la orden de reembolso dictada por el Administrador y sabido es que tal ataque colateral está prohibido. *Vargas* v. *Sánchez,* supra. *Cf. Eisele* v. *Orcasitas,* supra. Claramente el procedimiento de consignación se desviaba por completo del procedi-

50

miento fijado en estos casos por la Ley de Alquileres Razonables.

*La sentencia dictada por el Tribunal, objeto ahora de revisión, es correcta en tanto en cuanto desestima el recurso de revisión interpuesto por el casero ante dicho tribunal, y en su consecuencia, la confirmaremos y anularemos el auto de certiorari expedido.*