Juan T. Peñagarícano, como Administrador de Estabilización Económica de Puerto Rico, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. M. Almodóvar Acevedo, Juez, demandado; Harry Nadal Skerret, interventor.

Número 2429.

*Sometido:* 1 de octubre de 1959. *Resuelto:* 15 de junio de 1960.

878

879

*Juan T. Peñagarícano, pro se* y *Víctor M. Marchán, Abraham Freyre* y *Nieves Agostini de Torres,* abogados del peticionario; *Jorge Benítez Gautier,* abogado del interventor.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El 1ro. de diciembre de 1954 el inquilino Francisco Taime ocupó un apartamiento de vivienda sito en el edificio núm. 84 de la Avenida Ponce de León en Hato Rey, propiedad del interventor Harry Nadal Skerret. Se le cobró un canon mensual de $75. El alquiler que se pagaba en esta vivienda el 1ro. de octubre de 1942 era de $45 por mes según constancia de la Oficina de Administración de Precios (O.P.A.) federal. En abril y en junio de 1956 Taime se dirigió a la Administración de Estabilización Eco-

nómica alegando que el canon era excesivo. La Administración entendió que existía un aparente caso de sobreprecio a la luz del expediente de la vivienda y abrió la correspondiente investigación. El 14 de enero de 1957 el casero hizo una petición de aumento del alquiler máximo por el fundamento, entre otros, de que el mismo no guardaba relación con los prevalecientes para viviendas o locales similares en octubre 1 de 1942 y dicho alquiler de $45 estaba además materialmente afectado en esa fecha por relaciones de familia entre el casero y el inquilino de entonces, quien era una hermana suya. Después de los procedimientos correspondientes, el Administrador llegó a la conclusión de que el canon de $75 era sustancialmente más alto que el prevaleciente para viviendas o locales comparables al 1ro. de octubre de 1942, y en 21 de octubre de 1957 fijó un alquiler razonable de $57.70 por mes a base del comparable prevaleciente en aquella fecha, efectivo a partir del día 1ro. de noviembre de 1957. En 28 de octubre el Administrador informó a Taime haber fijado dicho alquiler máximo de $57.70 retroactivo al 1ro. de diciembre de 1954, a fin de que éste solicitara del casero la devolución de lo pagado en exceso. En 8 de noviembre de 1957 notificó formalmente a las partes una orden de reembolso al inquilino por la cantidad de $588.20, monto de un sobreprecio de $17.30 cobrado por mes durante 34 meses.

El 2 de septiembre de 1955 José Luis Cebollero ocupó otra vivienda en el mismo edificio pagando un alquiler mensual de $75. El canon que se pagaba el 1ro. de octubre de 1942 era de $40 por mes, según constancias de la Oficina de Administración de Precios. En abril 13, 1956, Cebollero pidió la revisión del alquiler por irrazonable. En 14 de enero de 1957 el casero solicitó, por fundamentos parecidos a los del caso anterior, un aumento del alquiler máximo de $40. El Administrador hizo igual determinación que en el caso de Taime en cuanto al alquiler comparable prevaleciente

para viviendas similares en 1942, y en 21 de octubre de 1957 fijó un canon máximo de $57.70 efectivo a partir del 1ro. de noviembre de 1957. En 18 de noviembre de 1957 dictó orden de reembolso a favor de Cebollero por la cantidad de $328.70 a base de un sobreprecio de $17.30 cobrado por mes durante 19 mensualidades.

No conforme, el casero acudió a la Sala de San Juan del Tribunal Superior en revisión de dichas órdenes, casos civiles números 57–6443 y 57–6576, y en ambos recursos alegó que el Administrador había fijado los cánones de $57.70 con efecto prospectivo a partir del 1ro. de noviembre de 1957 y que sin que hubiera mediado previamente orden provisional ni aviso de clase alguna al efecto de que dicha rebaja se aplicaría en forma retroactiva, ordenó el reembolso del sobreprecio durante 34 mensualidades en un caso y 19 en el otro; que no existía base legal para decretar tales reembolsos porque (1) si los mismos se habían ordenado debido a la rebaja de $17.30 en el canon mensual la reducción se decretó con efecto prospectivo, y (2) si el reembolso se ordenó sobre la base de que existía un alquiler menor en el período básico, tampoco procederían dichas órdenes cuyo efecto era revivir acciones prescritas.

El Tribunal Superior dictó sentencias modificando las órdenes de reembolso y limitó la retroactividad de éstos a sólo un año anterior a la fecha de las órdenes, o sea al 9 de noviembre de 1956 en el caso núm. 57–6443 y al 18 de noviembre de 1956 en el núm. 57–6576. A instancias del Administrador, quien ante nos alega que el tribunal sentenciador cometió error al (1) determinar que las órdenes de reembolso deben tener sólo un año de retroactividad a partir de su fecha y (2) al equiparar las órdenes de reembolso sencillo con el reembolso triple procedente de las acciones de triple daño, y que la cuestión presenta un problema en la administración de la Ley de Alquileres Razonables que no hemos resuelto, expedimos este certiorari.

I

 Por el art. 6 de la Ley de Alquileres Razonables —Ley 464 de 25 de abril de 1946, 17 L.P.R.A., secs. 186 et seq.—quedó prohibido, excepto en la forma dispuesta en la propia ley, el cobro de un alquiler mayor del que se pagaba el primero de octubre de 1942 el cual se consideró el *"alquiler básico"*. El Administrador fue autorizado para fijar el *alquiler razonable* teniendo en cuenta los factores y demás circunstancias provistos en dicho art. 6. No obstante cualquier contrato, pacto o convenio, ningún propietario puede cobrar ni recibir un canon mayor que el alquiler *básico* o el alquiler *razonable* que el Administrador fije. En los casos en que el Administrador ajuste el alquiler que se venía pagando antes de la vigencia de la ley o dicte una orden final sobre cualquier alquiler fijando en su lugar el alquiler razonable como en la ley se determina, el inquilino sólo está obligado a pagar el alquiler *básico* o el alquiler *razonable* a ese efecto fijado, pero no tiene derecho a reembolso o reclamación por lo pagado en exceso del alquiler razonable con anterioridad a la fecha en que éste se fijare, salvo en los casos en que por disposición expresa del estatuto el alquiler se ajustare automáticamente a la suma prevaleciente el 1ro. de octubre de 1942, y salvo en aquellos otros casos en que el Administrador ha dictado una orden provisional aumentando o fijando el alquiler máximo hasta que el caso sea resuelto en definitiva, pero el alquiler así aumentado o fijado queda sujeto a reembolso al inquilino en cuanto a aquella cantidad que resultare en exceso del alquiler máximo fijado en la orden final.

Cuando estos inquilinos ocuparon las viviendas en 1954 y 1955, al casero le estaba prohibido cobrarles un alquiler en exceso del que se pagaba en octubre 1ro. de 1942, que era el alquiler máximo fijado por ley. (Art. 6, párrafos 1ro.; y 12vo.) El alquiler razonable de $57.70 determinado por el Administrador fue efectivo a partir del 1ro.

de noviembre de 1957, sin que en el curso de los procedimientos se dictara una orden provisional aumentando el alquiler máximo mientras el asunto se resolvía en definitiva. Por lo tanto, hasta noviembre 1, 1957 y durante todo el período anterior en que los inquilinos ocuparon la propiedad el canon ilegal de $75 cobrado se reajustaba automáticamente a los que se pagaban en octubre de 1942. En ese caso, el inquilino tiene derecho a reembolso o reclamación por lo pagado en exceso del alquiler *básico*, según surge del párrafo 8 del art. 6. De los autos originales aparece, sin embargo, que a petición del casero el Administrador modificó el alquiler *básico* de $45 y $40 pagado en 1942, aumentándolo a $57.70 a base de un alquiler comparable en esa fecha para viviendas similares. A este respecto, el párrafo 9no. del art. 6 estatuye que si por razón de parentesco o de otras relaciones personales o especiales entre el casero y el inquilino, o si debido a circunstancias peculiares el alquiler devengado en 1ro. de octubre de 1942 era sustancialmente más bajo que el alquiler devengado en Puerto Rico por viviendas o edificaciones similares en esa misma fecha, el Administrador fijará, a instancias del propietario, el alquiler *razonable* conforme a las normas establecidas en la ley. La anterior disposición faculta al Administrador para fijar un alquiler razonable mayor que el *básico* tomando en cuenta el alquiler que en 1942 pagaban viviendas similares. Pero conforme a las normas de la Ley 464, el canon *básico* rige y está en vigor mientras el Administrador no lo alterare, y toda determinación final de un alquiler razonable tiene efecto prospectivo a partir de la misma en cuanto a la obligación del inquilino de pagar el alquiler razonable así determinado; a no ser que éste se hubiere ya fijado provisionalmente en el curso del procedimiento, caso en que el inquilino viene obligado a pagarlo desde la orden provisional.

▬ El Administrador dispuso que a partir de noviembre 1 de 1957 el canon razonable a pagarse era el que fijó

de $57.70 en lugar de los $75 que hasta esa fecha se cobraban. Pero al decretar el reembolso a que por ley tenían derecho los inquilinos dio a su orden que fijó un alquiler *razonable*, —a base de un canon comparable en 1942, — efecto retroactivo al período de congelación. En otras palabras, el Administrador fijó un alquiler razonable mayor que el *básico*, pero menor que el que se pagaba, *nunc pro tunc* a la fecha en que en violación de la ley se cobraron cánones mayores que el alquiler *básico*, pretendiendo de esa manera legalizar en parte el exceso cobrado sobre el canon *básico* antes de que éste se modificara. Privó así a los inquilinos del derecho a un reembolso mayor cada mes de todo el exceso sobre el alquiler congelado. Ni el párrafo 9no. del art. 6 al cual nos referimos, ni disposición otra alguna en la ley autorizan esta acción del Administrador, quien carece de facultad para sustituir retroactivamente por otro razonable, el canon estabilizado. En tanto los reembolsos quedaron limitados al exceso pagado cada mes entre el alquiler de $57.70 y el que se cobraba de $75 las órdenes administrativas fueron erróneas. En este recurso estamos imposibilitados de modificarlas a este respecto ya que los inquilinos perjudicados no solicitaron revisión de las mismas ante el Tribunal Superior.(¹)

Pasemos entonces a la cuestión sometida concerniente a la extensión retroactiva de las órdenes concediendo el reembolso. Ante la impugnación del casero negándole facultad al Administrador para dictar órdenes de reembolso en este caso por razón de que no se fijó un canon provisional pendientes los procedimientos, el tribunal a quo sostuvo dicha facultad, —lo cual fue correcto en las circunstancias de este

---

(¹) Del expediente administrativo surge que en octubre 11, 1957 Cebollero manifestó al Administrador que no tenía interés en el canon que se fijara para el futuro ya que había desocupado la propiedad desde marzo 10, e insistió en que él tenía derecho a un reembolso de $35 por mes a base del canon *básico*, y no de $17.30 a base del alquiler razonable fijado. El Administrador no accedió a lo solicitado y este inquilino tampoco pidió revisión ante el Tribunal Superior.

caso en que se trataba de un ajuste automático, —pero modificó las órdenes limitando la retroactividad de los reembolsos a los sobreprecios pagados no más de un año con anterioridad a las fechas de las órdenes dictadas a tal efecto. (²) Fue de opinión que no procede una orden administrativa de reembolso cubriendo sobreprecios pagados durante un período en que, a tenor de lo dispuesto en el párrafo (*h*) del art. 8 de la Ley—17 L.P.R.A., sec. 188 (h)—la acción de triple daño ya estaba prescrita; (³) y que las órdenes de reembolso dictadas tendrían el alcance de prorrogar administrativamente el término prescriptivo que concede la ley para el ejercicio de la acción y equivaldrían a determinar que el inquilino puede ejercer una acción de triple daño por el monto total de las cantidades cobradas en exceso. En sus conclusiones el tribunal sentenciador no hace distinción entre el *reembolso* extrajudicial o administrativo de lo indebidamente cobrado y la reclamación judicial de daños estatutarios con su período prescriptivo ésta. Si bien no cita autoridad nuestra o de otras cortes en apoyo de sus conclusiones, todo indica que enfocó el problema a base del derecho reconocido al inquilino bajo las leyes federales de control de precios y de inquilinato que rigieron aquí hasta el 31 de julio de 1953. Examinemos, pues, por vía de ilustración los antecedentes inmediatos de la cuestión envuelta según el problema se desarrolló a la luz de dicha legislación federal. (⁴)

La sec. 205 (a) de la ley federal de inquilinato de 1947 según fue posteriormente enmendada, —50 U.S.C.A., App.,

_____

(²) El casero no ha solicitado revisión ante nos, de modo que sólo está en controversia el alcance retroactivo de dichas órdenes.

(³) Dispone que las acciones de triple daño podrán incoarse sólo dentro del año siguiente a la fecha en que se hubiere pagado el sobreprecio o a la fecha en que se ordenare por el Administrador una reducción de alquiler incluyendo reembolso al inquilino, según fuere el caso.

(⁴) Véanse: *Housing and Rent Acts* (Ley de 1947 según enmendada) 50 U.S.C.A., App., secs. 1891 et seq.; 61 Stat. 196; *Emergency Price Control Act* de 1942, 50 U.S.C.A., App., sec. 901 *et seq.;* 56 Stat. 23.

sec. 1895, 61 Stat. 199, —disponía que cualquier persona que exigiera, aceptara, recibiera, o retuviera cualquier pago de alquiler en exceso del alquiler máximo prescrito por la ley, o por cualquier reglamento, orden o requerimiento bajo la misma, *respondería* a la persona de quien exigiera, aceptara, recibiera, o retuviera tal pago (o respondería a los Estados Unidos según se expresaba más adelante), de una suma razonable por concepto de honorarios de abogado y las costas que fijara el tribunal, *más* daños *líquidos* o predeterminados en la suma de (*a*) $50 o (*b*) *no más* de tres veces la cantidad en que el pago o pagos exigidos, aceptados, recibidos o retenidos excedía el alquiler máximo que legítimamente podía exigirse, aceptarse, recibirse o retenerse, según determinare el tribunal a su discreción; la suma que en cualesquiera de dichos casos (*a*) o (*b*) resultare ser la mayor. Según se aprobó originalmente en 1947, esta sección autorizaba a la persona a quien se le había cobrado en exceso a interponer una acción judicial en cualquier corte federal o estatal de jurisdicción competente para obtener *daños líquidos* en la forma expresada, acción que debía radicarse dentro de un año a partir de la violación por el casero y cobro del sobreprecio. Por enmiendas posteriores se autorizó también a Estados Unidos a transigir la reclamación o a instituir la demanda a su favor, igualmente dentro del año de la violación, si la persona perjudicada no presentaba el pleito dentro de los 30 días siguientes a la violación, o si por algún motivo no tenía derecho a instituirlo. En tal caso el inquilino perjudicado quedaba impedido de reclamar por las mismas violaciones.

Conviene anticipar que distinto a lo estatuído en los párrafos (*a*) y (*b*) del art. 8 de nuestra ley, los estatutos federales no contenían disposición alguna sobre *devolución*, o el reembolso del sobreprecio cobrado, aparte de la acción judicial de daños líquidos ya referida. Sin embargo, el problema en cuanto al derecho a la devolución del sobreprecio,

a diferencia del daño líquido, no tardó mucho en surgir, aunque con disparidad de criterio entre dos cortes de apelaciones. Cf: *Bowles* v. *Warner Holding Co.*, (C. A. 8) 1945, 151 F.2d 529 y *Bowles* v. *Skaggs*, (C. A. 6) 1945, 151 F.2d 817. El Tribunal Supremo en *Porter* v. *Warner Holding Co.*, 328 U. S. 395 (1946), estableció la doctrina pertinente. En este caso el Administrador federal actuando a tenor de lo dispuesto en la sec. 205 (*a*) de la Ley de Control de Precios de 1942, —56 Stat. 33, sustancialmente igual a la sec. 206 (*b*) de la Ley de 1947, 50 U.S.C.A. App., sec. 1896 (*b*), —radicó una acción de *injunction* para que el casero se abstuviera de seguir cobrando alquileres en exceso del máximo fijado. Dicha sección disponía que cuando a juicio del Administrador una persona se dedicaba o iba a dedicarse a cualesquiera actos o prácticas en violación de la ley, podía solicitar de la corte una orden prohibiendo tales actos o prácticas, o *una orden para hacer efectivo el cumplimiento de la ley*, y demostrado por el Administrador que tal persona se había dedicado o iba a dedicarse a tales actos o prácticas, se concedería un *injunction* provisional o permanente, orden de entredicho, *u otra orden*, sin fianza. Más tarde el Administrador enmendó la demanda solicitando, en adición al *injunction*, que la corte ordenara el reintegro a los inquilinos perjudicados de todas las cantidades cobradas en exceso, excepto a aquellos inquilinos que bajo la sec. 205 (*e*) de la Ley de 1942 hubieran ya instituído una acción de daños líquidos por $50 o tres veces el sobreprecio. La Corte de Distrito concedió el *injunction* pero denegó, al igual que la de Apelaciones, la *devolución* (*restitution*) por entender que carecía de jurisdicción y de poder bajo el estatuto para concederla. El Tribunal Supremo resolvió que habiéndose invocado la jurisdicción equitativa de la Corte de Distrito al solicitarse el *injunction* bajo la sec. 205 (*a*), la corte tenía jurisdicción y facultad para decretar la devolución de lo pagado en exceso, expresando que era claro que una orden

obligando a *devolver* ganancias, alquileres o propiedades adquiridas en violación de la Ley de Control de Precios podía ser emitida por la corte bajo la facultad concedídale por la sec. 205 (a) de decretar un *injunction*, orden de entredicho *u otra orden;* y que una orden de devolución podía ser esa *"otra orden"* primero, como aditamento incidental a una orden de *injunction* y, segundo, como una orden apropiada y necesaria para hacer efectivo el cumplimiento de la ley y la política pública del estatuto. Dijo el Tribunal Supremo que una orden de devolución podía ser apropiada para asegurar más efectivamente el futuro cumplimiento de la ley al obligarse a una persona a restituir ganancias ilegales. Comparando entonces la mera *devolución* de lo pagado en exceso con la acción estatutaria de *daños,* expresó el Tribunal (328 U. S. pág. 402):

"Devolución (*restitution*) que cae bajo la jurisdicción equitativa, es compatible con, y difiere grandemente de, los daños y penalidades que puedan concederse bajo la sección 205 (e) [x] . . . [citas]. Cuando el Administrador pide la *devolución* él no solicita que la corte conceda *daños estatutarios* al comprador o inquilino, o que se le pague a dicha persona parte de las penalidades que acrecen al Tesoro de Estados Unidos en un pleito del Administrador bajo la sección 205 (e). Más bien, él le pide a la corte *que actúe en el interés público restableciendo el status quo* ordenando la devolución de aquello que legalmente pertenece al comprador o inquilino." (Énfasis adicionado.)

La decisión de *Porter* fue ratificada y se amplió en cierto modo, en *United States* v. *Moore,* 340 U.S. 616 (1951). En este segundo caso el Administrador pidió en la misma acción un *injunction*, daños estatutarios y la *devolución* de los sobreprecios para el inquilino, invocando las secs. 205 (a) y 206 (b) de la Ley de 1947 (supra). La Corte de Distrito concedió daños líquidos o estatutarios de $50, y ordenó la

---

[x] Corresponde a la sec. 205 (a) de la Ley de 1947, según enmendada.

devolución al inquilino de todos los sobreprecios pagados. La Corte de Apelaciones revocó, sosteniendo que el Administrador tenía una acción sólo por los daños líquidos estatutarios y ordenó la desestimación del caso en cuanto al injunction y en cuanto a la devolución. Se aceptó luego que no procedía expedir el injunction porque el control de alquileres en esa localidad había cesado pendiente el caso. La Corte de Apelaciones opinó que como ya no procedía el injunction, y la devolución funcionaba incidentalmente al mismo, no procedía ésta tampoco. Reafirmando lo decidido en *Porter*, supra, y ampliando aún más la doctrina, el Tribunal Supremo fue de opinión que la orden de devolución podía dictarse por la Corte de Distrito como corte de equidad aun cuando no se invocara o no procediera el remedio de injunction, como una *orden*, bajo la sec. 206(b) (1947) para hacer efectivo el cumplimiento de la ley durante el período en que el casero exigió y recibió alquileres en exceso.

A partir de las decisiones de *Porter* y de *Moore*, quedó firmemente establecido que en adición a la acción de daños líquidos estatutarios para beneficio de Estados Unidos, el Administrador podía solicitar y obtener para los perjudicados, bajo las secs. 205(*a*) de la Ley de 1942 y su equivalente 206(*b*) de la Ley de 1947, la devolución del sobreprecio como un medio de hacer valer la ley y la política pública del Congreso; que ambas acciones podían acumularse en un mismo procedimiento; que procedía ordenar la devolución aun cuando ya hubiese cesado el control de alquileres y no pudiera invocarse un injunction; que procedía la devolución sencilla de lo cobrado durante el período cubierto también por la acción estatutaria de daños líquidos, y finalmente, que a la causa de acción reconocida al Administrador para recuperar el exceso no le era aplicable el período prescriptivo de un año fijado para la de daños líquidos. Los siguientes casos ilustran los anteriores criterios: *Camuñas* v. *United States*, (C. A. 1) 212 F.2d 540; *United States* v. *Owens*,

(C. A. 6) 207 F.2d 725; *United States* v. *Lesniewski*, (C. A. 2) 205 F.2d 802; *United States* v. *Carter*, (C. A. 10) 197 F.2d 903; *United States* v. *Ziomek*, (C.A. 8) 191 F.2d 818; *United States* v. *Pileggi*, (C. A. 2) 192 F.2d 878; *Mahanor* v. *United States*, (C. A. 1) 192 F.2d 873; *Orenstein* v. *United States*, (C. A. 1) 191 F.2d 184; *United States* v. *Simons*, (C. A. 10) 190 F.2d 167; *United States* v. *Fogaley*, (C. A. 10) 190 F.2d 163; *Woods* v. *Richman*, (C. A. 9) 174 F.2d 614; *Co-Efficient Foundation* v. *Woods*, (C. A. 5) 171 F.2d 691; *Woods* v. *Wayne*, (C. A. 4) 177 F.2d 559; *Ebeling* v. *Woods*, (C. A. 8) 175 F.2d 242; *Woods* v. *McCord*, (C. A. 9) 175 F.2d 919; *Woods* v. *Witzke*, (C. A. 6) 174 F.2d 855; *Blood* v. *Fleming*, (C. A. 10) 161 F.2d 292; *Bowles* v. *Skaggs*, (C. A. 6) 151 F.2d 817; *Matheny* v. *Porter*, (C. A. 10) 158 F.2d 478; *Warner Holding Co.* v. *Creedon*, (C. A. 8) 166 F.2d 119; *Woods* v. *Wolfe*, (C. A. 3) 182 F.2d 516; *Smith* v. *Woods*, (C. A. 5) 178 F.2d 467. En *United States* v. *Fogaley, supra,* la Corte de Distrito ordenó la devolución, pero expresamente la limitó sólo al período no prescrito para la acción de daños líquidos o triple daño, tal como entendió el Tribunal Superior en este caso. La Corte de Apelaciones revocó sosteniendo que dicha prescripción no le era aplicable a la devolución. En *United States* v. *Lesniewski,* supra, el Juez Clark expresó: (pág. 804) "Se considera por lo tanto como ley ya establecida que la Corte de Distrito puede en uso de su discreción conceder la devolución de los sobreprecios en adición a los daños estatutarios [líquidos] y en la misma acción . . . (citas) y que esta devolución no está limitada al sobreprecio de un año como en la concesión de daños" . . . (Citas).

Tal fue la situación jurisprudencial en torno a acciones instituídas por el Administrador actuando bien a tenor de las secciones referentes a daños estatutarios líquidos (205(e) de 1942 y 205(a) de 1947); bien bajo las referentes al

injunction u otras órdenes de la jurisdicción equitativa (205(*a*) de 1942 y 206(*b*) de 1947); o ya bajo ambas secciones conjuntamente en donde, como se ha visto, la devolución se concedió como un medio de hacer cumplir la política pública del Congreso sobre precios e inflación. Esos casos, debe ser claro, no envolvían una acción traída directamente por el inquilino perjudicado para obtener la devolución del sobreprecio. Ya observamos antes que ninguno de los estatutos federales concedió al inquilino en forma expresa y directamente el derecho a recuperar lo pagado en exceso, sino que le dio el derecho a obtener honorarios de abogado, las costas del procedimiento, y $50 o no más de tres veces el sobreprecio cobrado, lo que fuera mayor, limitando este derecho a ser ejercitado dentro de un año de la violación.

En lo que concierne a acciones interpuestas directamente por el inquilino, no ya por el Administrador, las decisiones, más escasas, en su mayoría se han pronunciado en forma distinta. En *Meyercheck* v. *Givens*, 180 F.2d 221, (C.A. 7), la acción se interpuso por varios inquilinos bajo la sec. 205 de la ley federal de 1947. La Corte de Distrito concluyó que existió una violación intencional y concedió daños por vez y media los sobreprecios cobrados durante el año inmediatamente anterior a la demanda, pero en cuanto a varios inquilinos, concedió también el monto de los sobreprecios durante un período anterior al referido año. Revocando, la Corte de Apelaciones sostuvo que según el estatuto, un inquilino no tenía causa de acción por este último concepto, ni aun bajo la teoría del cobro o retención de lo indebido; que su única acción era la del daño estatutario limitada al año mencionado, y que en cuanto a aquellos otros sobreprecios anteriores a ese año, la ley no le concedía remedio alguno. Esta decisión ha sido seguida por varias cortes estatales aplicando la ley federal, en acciones traídas por el inquilino. Cf: *Huff* v. *Spruance*, (Ohio) 116 N.E.2d 470; *Thomsen* v. *Mill*, (Missouri) 248 S.W.2d 6; *Castrovinci* v. *Castrovinci*,

(Ohio) 112 N.E.2d 53; *Jenkins* v. *Kaplan,* (N. J. Super. Ct., App. Div.) 141 A.2d 802 y casos ahí citados.(5)

## II

■■ Bajo la legislación federal que estuvo aquí en vigor las conclusiones de la Sala sentenciadora tendrían tal vez alguna razón de ser ya que la acción *judicial* directa de daños líquidos o triple daño era el único remedio del inquilino perjudicado, limitada dicha acción al sobreprecio pagado dentro del año anterior a la radicación en corte de la demanda. A este caso, surgido a partir del primero de diciembre de 1954, le es aplicable únicamente la legislación local de inquilinato que, como veremos, dispone de distinta manera. Según fue aprobada originalmente la Ley 464 en 25 de abril de 1946, en el art. 8 se concedió como resarcimiento al inquilino que hubiere pagado en exceso del alquiler *básico* o del alquiler razonable fijado por el Administrador, daños líquidos por $50, o por el triple de la cantidad en que el alquiler pagado excedía el alquiler aplicable, cualquiera de dichas sumas que fuera la mayor, más costas y honorarios. Estos daños podían reclamarse sólo dentro del año siguiente a la fecha en que se hubiera pagado el alquiler. Nuestro estatuto en un principio siguió la norma federal conocida. Pero ya en su próxima Sesión Ordinaria la Asamblea Legislativa modificó sustancialmente el art. 8, según hoy reza, por la Ley 421 de 14 de mayo de 1947 proveyéndose para la devolución o el reembolso administrativo de alquileres cobrados en exceso. Se estatuyó entonces que el propietario que cobre o que reciba de su inquilino una cantidad en exceso del alquiler máximo fijado por el Administrador, *debe devolver* dicho exceso al inquilino dentro de los treinta días siguientes a ser requerido para ello, bien por el inquilino o ya por el Administrador;

---

(5) En *Shread* v. *Breton,* 132 N.E.2d 177, la Suprema Corte Judicial de Massachusetts reconoció al inquilino, bajo la sec. 205, el derecho a la *devolución* del sobreprecio, pero esta no es la interpretación prevaleciente. Compárese también *Brinkmann* v. *Urban Realty Co.,* (N. J.) 89 A.2d 394.

y que en aquellos casos en que el Administrador reduce un alquiler incluyendo reembolso al inquilino, el propietario debe llevar a efecto dicho reembolso también dentro de treinta días a partir de la fecha de la orden a tal efecto. (Artículo 8(a), (b).) Si dentro del referido término de treinta días las partes lo acuerdan o a petición de cualquiera de ellas el Administrador lo autoriza, el reembolso puede efectuarse mediante pagos parciales futuros que pueden ser deducidos de los alquileres a devengarse si el inquilino sigue ocupando la propiedad. (Artículo 8(c).)

El art. 8(d) conservó a favor del inquilino la acción judicial de daños líquidos por $50, o por tres veces el importe del reembolso, lo que fuera mayor, más costas y honorarios, pero distinto a la ley federal y al art. 8 según fue originalmente aprobado, la acción judicial de daños quedó ahora relegada a segundo término, pudiendo interponerse sólo en los casos en que el casero se niega a devolver o reembolsar el exceso al inquilino, según fuere ordenado o requerido, dentro del período de 30 días mencionado en los párrafos (a) y (b); o a llevar a cabo el acuerdo del párrafo (c).([6]) Por la forma en que se enmendó el art. 8 fue clara la intención legislativa de exigir del propietario, como primera providencia, la devolución por la vía administrativa del alquiler que se hubiere cobrado en exceso del máximo autorizado en violación del estatuto o de sus normas. Aparentemente fue éste el remedio escogido preferentemente por el legislador para hacer efectivo el cumplimiento de la ley y su política pública y desalentar las violaciones, no permitiendo al casero retener para su beneficio cantidades cobradas ilegalmente que correspondían al inquilino. De ahí, que a los fines de restablecer el estado de derecho en el cobro de alquileres que siempre debió haber prevalecido, a no ser por la violación, no se fijara limitación prescriptiva en cuanto al derecho del

---

([6]) El historial legislativo de la Ley 421 enmendatoria del art. 8 no expresa las razones que hubo para este cambio sustancial de norma legislativa en la operación del estatuto.

inquilino a meramente obtener un reembolso administrativo
de los alquileres pagados en exceso, a diferencia de la acción
judicial de triple daño que por ser de naturaleza punitiva
permite al inquilino obtener por vía de sanciones cantidades
en exceso de las que pagó.(7)

La devolución extrajudicial del sobreprecio dentro de un
término fijo previo requerimiento u orden administrativa y,
en su defecto, la acción judicial de daños de no cumplirse
con lo anterior, constituyen etapas separadas y distintas en
la aplicación de la ley y en su cumplimiento.

 El art. 5(d) faculta al Administrador para dic-
tar ... "aquellas reglas, ... *órdenes* y determinaciones que es-
time necesarios o propios," a fin de llevar a cabo los propósitos
de la ley. Independientemente del hecho de si un caso llega
o no a la etapa en que es necesario acudir a la acción judi-
cial, es incuestionable que en aquellos casos en que de acuerdo
con la ley procede conceder un reembolso, el Administrador
no sólo tiene facultad sino que viene obligado a dictar una
orden de reembolso cubriendo cualquier alquiler cobrado por
un casero en exceso del autorizado, como un medio de hacer
cumplir los propósitos de la ley contenidos en los párrafos
(a), (b) y (c) del art. 8 referentes a la devolución o re-
embolso administrativo, sin cuyo trámite previo no puede
acudirse a la acción judicial. El monto específico a obte-
nerse por vía de triple daño no cae bajo la esfera del Admi-
nistrador, y corresponde a las cortes determinarlo a la luz
de la disposición prescriptiva. Indudablemente que los tri-
bunales no pueden conceder el reembolso triple de un sobre-

---

(7) Por otra parte no se creyó una sana norma en las relaciones de
inquilinato el permitir el enriquecimiento irrazonable del inquilino a través
de esta acción punitiva, mostrándose indiferente o hasta pagando cons-
cientemente el sobreprecio por tiempo indefinido para pretender recobrarlo
luego por partida triple. De ahí que en todo momento y tanto en la
legislación federal como en la nuestra, esta acción siempre ha estado
limitada al reembolso triple de sólo aquellos sobreprecios pagados durante
el período razonable de un año inmediatamente anterior a la interposición
de la demanda.

precio pagado con anterioridad al año inmediatamente anterior a la fecha de la interposición de la demanda, que es el punto de partida correcto para contar dicho año, y no la fecha en que el Administrador dicte una orden de reembolso. Como cuestión de hecho el Administrador no podría determinar a la fecha en que dicta una orden de reembolso qué sobreprecios estarían prescritos en caso de que hubiera que acudirse a la acción judicial, desconociendo cuándo ha de interponerse ésta. A la luz de lo expuesto la determinación del tribunal a quo, modificando las órdenes de reembolso para limitar éstos a los sobreprecios cobrados dentro del año inmediatamente anterior a la fecha de dichas órdenes, no fue correcta en ley. (⁸)

En este caso el Tribunal Superior tenía ante si, como tenemos nosotros, la revisión directa de la orden administrativa y no una demanda de daños líquidos. Ello aconseja advertir que no resolvemos ahora ni anticipamos juicio en forma alguna, lo que se dejará para la ocasión apropiada, en cuanto a si bajo lo dispuesto en los párrafos (a) y (b) del art. 8 el inquilino puede o no reclamar judicialmente el importe sencillo de los sobreprecios cobrados, o de interponer la acción de daños, si puede o no reclamar el exceso sencillo pagado más allá del año prescriptivo como una segunda causa de acción, o si por el contrario, en caso de que el propietario se niegue a devolver administrativamente, su único

---

(⁵) Aun dentro de los propios razonamientos del tribunal sentenciador, su determinación tampoco podría ser correcta ya que partiendo de la actuación errónea del Administrador al darle efecto retroactivo al alquiler razonable, el Tribunal consideró que dicho alquiler razonable de $57.70 ya estaba fijado a la fecha en que los inquilinos ocuparon la propiedad y aplicó entonces la primera disposición del art. 8(h) que cuenta el período prescriptivo a partir del pago del sobreprecio. Descartado el error administrativo, la orden en este caso fue una de reducción de alquiler con reembolso al inquilino (si no de toda la cantidad a que tenían derecho cada mes) comenzando a contarse en tales casos el período prescriptivo para la interposición de la demanda a partir de la fecha de la orden de reembolso.

remedio es el reembolso judicial triple, pero con la limitación prescriptiva.

Por los fundamentos anteriormente expresados, *se anulan las sentencias recurridas dictadas por la Sala de San Juan del Tribunal Superior en los casos núm. 57–6443 y núm. 57–6576, Harry Nadal Skerret v. Mejías, Administrador, en tanto las mismas modificaron las órdenes administrativas de reembolso para limitar su cuantía a aquellos sobreprecios pagados dentro del año anterior a la fecha de las órdenes, y se devolverán los autos originales al Tribunal de instancia para ulteriores procedimientos no incompatibles con esta opinión.*