Banco Popular de Puerto Rico, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Antonio S. Romero, demandado; Margarita Domínguez, interventora.

Número 2389.

*Sometido:* 9 de marzo de 1959. *Resuelto:* 9 de marzo de 1961.

*Gabriel de la Haba, Rafael Baragaño, Jr., y Garrard Harris,* abogados del peticionario; *Víctor A. Coll,* abogado de la interventora, demandante en el pleito principal.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

Margarita Domínguez interpuso demanda ordinaria en la Sala de San Juan del Tribunal Superior contra el Banco Popular de Puerto Rico, alegando que en 1ro. de febrero de 1952 ella alquiló un apartamiento para vivienda en el tercer piso del edificio núm. 258 de la Calle San Justo administrado por el Banco, por el canon de $50 mensuales; que el deman-

dado le cobró un alquiler de $75 desde esa fecha hasta el 31 de julio de 1955, o sea un sobreprecio de $25 por mes durante 41 meses montante a $1,025; y que el 14 de septiembre de 1955 ella le exigió al Banco el reembolso del exceso cobrado, y transcurrieron 30 días sin que fuera devuelto dicho exceso. Solicitó la demandante que se condenara al Banco a satisfacerle la suma de $3,075, o sea tres veces el sobreprecio de $25 por mes que le fue cobrado desde el 1ro. de febrero de 1952 hasta el 31 de julio de 1955, más costas y honorarios de abogado.

El Banco Popular contestó la demanda aceptando que la demandante había pagado un canon de $75 desde el 1ro. de febrero de 1952 hasta el 31 de julio de 1955, pero negó que hubiera arrendado la propiedad para vivienda y que hubiera cobrado cantidad alguna en exceso del canon máximo legal, alegando en contrario haber arrendado a la demandante "el local comercial a que se refiere la demanda para uso y ocupación a propósitos comerciales o profesionales, por el canon de $75 mensuales autorizado por la Oficina de Administración de Precios de Puerto Rico." Aceptó que la demandante le había requerido el reembolso de los alquileres que alegaba haber pagado en exceso, y que no se los devolvió, habiendo transcurrido 30 días desde dicho requerimiento. Finalmente, levantó como defensa que la acción de triple daño estaba prescrita en cuanto a cualquier sobreprecio cobrado con anterioridad al día 10 de noviembre de 1954, de acuerdo con lo dispuesto en el artículo 8(h) de la Ley de Alquileres Razonables. La demanda se radicó en el Tribunal Superior el 10 de noviembre de 1955.

Visto el caso en sus méritos la Sala sentenciadora dictó sentencia en 28 de diciembre de 1956 decretando que el Banco demandado había cobrado a la demandante $25 al mes en exceso del precio fijado como máximo para dicho apartamiento como vivienda, pero determinó que la acción de triple daño estaba prescrita en cuanto a los sobreprecios cobrados con anterioridad al 10 de noviembre de 1954, o sea, con an-

terioridad al año que inmediatamente precedió al día en que se interpuso la demanda. En lugar de los $3,075 reclamados, concedió a la demandante en su sentencia la suma de $675 que representaba el triple del exceso cobrado cada mes durante un período de 9 meses, o sean los dos meses de noviembre y diciembre de 1954 y los siete de enero 1ro. a julio 31 de 1955. Condenó al demandado a pagar $175 por concepto de honorarios de abogado más las costas del pleito. La sentencia se notificó a las partes el 14 de enero de 1957 y transcurrió el término de 30 días sin que ninguna de ellas apelara de la misma, o solicitara reconsideración, quedando final y firme.

El 26 de febrero de 1957, después de haber sido pagada la sentencia por el Banco, la demandante radicó en el Tribunal Superior una moción pidiendo la corrección de la misma. Alegó que existía un error en dicha sentencia porque si bien el tribunal decidió que la demandante podía reclamar triple daño sólo en cuanto a los sobreprecios incluidos en el período de 9 meses no prescrito, había resuelto que la demandante pagó sobreprecios desde el 1ro. de febrero de 1952 hasta julio 31 de 1955, y que por lo tanto ella podía recobrar a *tipo sencillo* durante el período desde el 1ro. de febrero de 1952 hasta el 1ro. de octubre de 1954. Sostuvo la demandante que el Banco le debía por tal concepto la suma adicional de $825, o sea el sobreprecio cobrado cada mes durante dicho período. El 19 de marzo de 1957 el tribunal dictó resolución ["Corrección de Sentencia"] haciendo constar lo siguiente:

"En su moción la parte demandante sostiene que nuestra sentencia de diciembre 28 de 1956 debe ser corregida, en armonía con lo dispuesto en la Regla 60 de las de Enjuiciamiento Civil, y requerir del demandado la devolución del sobreprecio de $25.00 por él cobrado desde febrero 1º de 1952 hasta el 31 de octubre de 1954, ó sea durante 33 meses.

"A la parte demandante le asiste la razón.

"En la referida sentencia nuestra concentramos nuestra atención en el punto específico de los triples daños; y, por

*inadvertencia, nada dispusimos* en relación con el sobreprecio de $25.00 al mes, o sea (33 × 25.00=) $825.00, que por el demandado fue cobrado, ut supra, y por la demandante fue reclamado en su demanda de noviembre 7, 1955.

"En su virtud, se enmienda nuestra sentencia para requerir del demandado que también devuelva a la parte demandante dichos $825.00, cobrados en exceso." (Énfasis adicionado.)

Por cuestiones de trámites, en 8 de abril de 1957 el propio Juez dejó sin efecto dicha resolución y posteriormente, en 23 de agosto de 1957, dictó resolución restableciendo la misma. El demandado le pidió entonces que aclarara si la resolución de 19 de marzo de 1957 mediante la cual corrigió la sentencia original de 28 de diciembre de 1956 era efectiva o no a partir del 6 de septiembre de 1957, cuando le fue notificada la resolución de 23 de agosto, y habiéndose opuesto la parte demandante, el Juez, en 17 de septiembre de 1957, declaró sin lugar la referida moción expresándose así:

"Si se trataba únicamente de la corrección de una sentencia por inadvertencia excusable en *calcular matemáticamente un determinado número de cánones de arrendamiento a devolver,* no vemos cómo es posible mirar prospectivamente la sentencia, como una nueva dictada, y por ende darle sus efectos de finalidad con fecha 6 de septiembre de 1957." (Énfasis del Juez.) [1]

Para revisar la resolución de la Sala sentenciadora de 19 de marzo de 1957, restablecida por la del 23 de agosto, en virtud de la cual por vía de corrección de sentencia concedió a la demandante la cantidad adicional de $825, expedimos certiorari a solicitud del Banco, quien sostiene ante nos que la referida resolución es errónea en los méritos; y además, que la Sala sentenciadora no tenía facultad en ley para dictar la misma. Lógicamente, procede que resolvamos en primer lugar este último aspecto del caso.

■■ El artículo 8(*a*) de la Ley de Alquileres Razonables, Ley 464 de 25 de abril de 1946 según se enmendó por la

---

[1] La importancia que ello tenía para la parte demandada es que de tener efecto prospectivo la sentencia corregida a partir de septiembre 6 de 1957, ella hubiera disfrutado del término para apelar la misma.

Ley 421 de 14 de mayo de 1947, 17 L.P.R.A., sec. 188, dispone que "[E]l propietario que cobre o reciba de su inquilino una cantidad en exceso del alquiler máximo fijado por el Administrador deberá devolver dicho exceso a su inquilino dentro de los treinta (30) días siguientes a ser requerido para ello, por escrito, por el inquilino o por el Administrador." El inciso (d) de dicho artículo estatuye que si transcurren los treinta días mencionados sin que el propietario haya efectuado el reembolso ... "el inquilino podrá incoar contra el propietario una acción por tres veces el importe del reembolso o por cincuenta (50) dólares, cualquiera de estas sumas que fuese la mayor, más las costas y honorarios de abogado del demandante." El inciso (h) del artículo 8 dispone entonces que las acciones de triple daño autorizadas por este artículo "podrán incoarse solamente dentro del año siguiente a la fecha en que se hubiera pagado el sobreprecio o a la fecha en que se ordenare por el Administrador una reducción de alquiler incluyendo reembolso al inquilino, según fuere el caso."

Tal como surge del récord, la demandante no utilizó la vía administrativa para obtener el reembolso sino que a la luz del inciso (a) requirió directamente al demandado para que le devolviera el alegado sobreprecio. Transcurridos treinta días sin que el demandado efectuara dicha devolución la demandante inició la acción por tres veces el importe del reembolso a tenor de lo dispuesto en el inciso (d).

No cabe la menor duda que la Sala sentenciadora creyó que lo que hacía era corregir una mera *inadvertencia suya* en cuanto a un cálculo matemático de unos cánones a devolver. Tan estuvo en esa creencia, aparte de expresarlo, que su decisión de septiembre 17 de 1957 tuvo el efecto de hacer *"nunc pro tunc"*, a la fecha de la sentencia original, la corrección de marzo 19. Sin embargo, la situación era una completamente distinta como cuestión de derecho.

Es cierto que la demanda cubría una reclamación de triple daño por todo el período desde el 1ro. de febrero de 1952

hasta el 31 de julio de 1955, y que la Sala sentenciadora declaró prescrita la acción en cuanto a los cánones cobrados con anterioridad al mes de noviembre de 1954 y dictó sentencia de triple daño sólo en cuanto a aquéllos cobrados con posterioridad a esa fecha no prescritos. Pero tal situación no conducía inevitablemente a la conclusión que, dentro de esta demanda, la demandante tenía a su favor en derecho una causa de acción *judicial* por el monto sencillo de todo el sobreprecio pagado durante el período que, a los efectos de la acción de triple daño, ya había prescrito. El problema que se le presentó a la Sala sentenciadora con la moción de la demandante para que se corrigiera la sentencia es, precisamente, el problema de derecho que no hace mucho dejamos reservado y sin resolver en *Peñagarícano* v. *Tribunal Superior*, 81 D.P.R. 877, expresándonos de la siguiente manera:

"En este caso el Tribunal Superior tenía ante sí, como tenemos nosotros, la revisión directa de la orden administrativa y no una demanda de daños líquidos. Ello aconseja advertir que no resolvemos ahora ni anticipamos juicio en forma alguna, lo que se dejará para la ocasión apropiada, en cuanto a si bajo lo dispuesto en los párrafos (*a*) y (*b*) del art. 8 el inquilino puede o no reclamar juiciosamente el importe sencillo de los sobreprecios cobrados, o de interponer la acción de daños, si puede o no reclamar el exceso sencillo pagado más allá del año prescriptivo como una segunda causa de acción, o si por el contrario, en caso de que el propietario se niegue a devolver administrativamente, su único remedio es el reembolso judicial triple, pero con la limitación prescriptiva." [2]

Explicada la naturaleza del asunto que se le sometió a la Sala sentenciadora, veamos en cuanto a su facultad en ley para disponer del mismo de la manera en que lo hizo.

La Regla 60 de Enjuiciamiento Civil (1943) que regía en 19 de marzo de 1957 cuando el Juez de instancia corrigió la sentencia, disponía en su inciso (*a*) que "errores clericales en las sentencias, órdenes, y otras partes del récord, y los causados por inadvertencia u omisión", podrían corregirse en

---

[2] Como se observará más adelante, la decisión de este caso no requiere tampoco que resolvamos ahora este problema.

cualquier tiempo, previa notificación, por la corte a su propia iniciativa, o a moción de cualquier parte. 32 L.P.R.A. Ap., R. 60. Hemos visto que no se trataba de un mero error "clerical" o de una inadvertencia u omisión del Juez, en su sentencia, en cuanto al cálculo matemático de cánones a reintegrar, sino que lo que estaba ante él era un problema de derecho que envolvía la interpretación de los incisos (a), (d) y (h) del artículo 8 de la Ley de Alquileres Razonables según apuntamos ese problema en el caso de *Peñagarícano*, supra. El cambio que en dicha sentencia creía hacer la Sala sentenciadora, por vía de corrección de una inadvertencia suya en un cómputo aritmético, no era otra cosa que el reconocimiento a favor de la demandante de una causa de acción *judicial* por el monto sencillo de los sobreprecios cobrados y ya prescritos a los efectos de la acción de triple daño, reconocimiento que de habérsele hecho en la sentencia originalmente dictada pudo haber constituido, o no haber constituido, un error de derecho en la aplicación de la Ley de Alquileres Razonables revisable por apelación. A la luz de todo lo expresado es obvio que la situación no caía bajo el inciso (a) de la Regla 60 según disponía la misma cuando el Juez la aplicó en este caso, y por los mismos fundamentos no caería tampoco bajo su equivalente de ahora, la Regla 49.1 de Procedimiento Civil de 1958.([³]) Nunca se ha entendido que bajo el inciso (a) de la Regla 60, hoy Regla 49.1, se pudo corregir un error judicial. Cf: *Cyclopedia of Federal Procedure*, 3rd. ed. Vol. 10, págs. 295–299; 29 *Cal. Jur.* 2d., pág. 17; Moore, *Federal Practice*, 2nd. ed. Vol. 6, págs. 4041–4053; Barron & Holtzoff, *Federal Practice & Procedure*, Vol. 3, págs. 398–402.

---

([³]) La Regla 49.1, idéntica a la Regla 60 (a) federal después que ésta fue enmendada en 1946, dispone en lo pertinente que los errores de forma en las sentencias, órdenes u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordenare. 32 L.P.R.A., Sup. Acum. (1959), R. 49.1.

■■ Examinaremos entonces la situación a la luz del inciso (*b*) de la Regla 60, el cual disponía que mediante moción, y bajo aquellas condiciones que fueran justas, la corte podría relevar a una parte o a su representante legal, de una sentencia, u orden dictada o acción tomada en su contra por error, inadvertencia, sorpresa o negligencia excusable. La moción debía hacerse dentro de un término razonable pero en ningún caso después de tanscurridos seis meses de haberse dictado la sentencia, y no afectaba la finalidad de la misma o suspendía sus efectos. 32 L.P.R.A., Ap., R. 60(*b*). En *Guilhon & Barthelemy* v. *Corte*, 64 D.P.R. 303 (1944) aclaramos (pág. 311) que al trasplantarse el artículo 140 del Código de Enjuiciamiento Civil a la Regla 60 (*b*) este Tribunal cometió el mismo error de traducción hallado en el artículo 140 y dijimos: "[c]omo indica el texto inglés es la equivocación, etc., de la parte promovente, y no la equivocación de la corte o de otras personas, que puede ser corregido de conformidad con el mismo." En *González* v. *American Surety Co.*, 71 D.P.R. 354 (1950) ratificamos el anterior criterio (págs. 357–358) expresando que el inciso (*b*) de la Regla 60 se refería a aquellos casos en que por inadvertencia, error, sorpresa o negligencia excusable *de una parte* la corte podía relevarla de una sentencia u orden dictada o acción tomada en su contra. En *Iturriaga* v. *Fernández*, 78 D.P.R. 31 (1955) volvimos a ratificarnos y dijimos (pág. 37): "[c]onvenimos con la apelada en que la Regla 60(*b*) por su contexto no autoriza que se deje sin efecto una sentencia por errores cometidos por un tribunal. En realidad dicha Regla se refiere a errores de la parte y no a errores del tribunal." (⁴)

_____

(⁴) En efecto, la Regla 60(*b*) federal según entró en vigor originalmente en septiembre 16 de 1938 y tal como regía en 1943 cuando adoptamos las nuestras, disponía que la corte podía relevar a una parte o a su representante legal de una sentencia, orden, o acción tomada contra ella por *su* error, inadvertencia, etc. ("may relieve a party or his legal representative from a judgment, order, or proceeding *taken against him* through *his* mistake, inadvertence," etc.). La Regla 60(*b*) que adoptamos disponía en idéntica forma en su texto en inglés. 32 L.P.R.A. Appendix,

A tenor de la situación procesal que regía aquí en marzo 19 de 1957 y de la doctrina aplicable, y habiendo invocado la demandante en su moción de 26 de febrero de 1957 el inciso (*b*) de la Regla 60 para corregir un alegado error del *Tribunal*, [en el supuesto de que pudo haber sido un error no dictarse sentencia por el monto sencillo de los cánones. Cf: *Peñagarícano* v. *Corte*, supra], y no para corregir un error o inadvertencia *de la parte*, no procedía en ley la concesión del remedio solicitado tampoco bajo este inciso de la Regla.(⁵)

---

R. 60 (*b*). En esa parte de la regla la federal siguió literalmente el artículo 473 del Código de Enjuiciamiento Civil de California, y tanto por su propio texto como por la jurisprudencia de ese Estado, se interpretó y se aplicó siempre en el sentido de que se refería al error de la parte, ya fuere error de hecho o de derecho, y no a errores del tribunal. Tal es aún la situación en California, y así continuó siendo la Regla 60(*b*) nuestra hasta que se cambió en 1958.

Sin embargo, desde 1946 el inciso (*b*) de la regla federal fue sustancialmente modificado eliminándose las palabras *"taken against him"* y *"his"*, disponiéndose entonces que la corte puede relevar a una parte o a su representante legal de una sentencia final, orden o procedimiento por las siguientes razones (1) error, inadvertencia, sorpresa o negligencia excusable; (2)....28 U.S.C.A. R. 60(*b*), pág. 310. Para una amplia exposición véase Moore, op. cit., Vol. 7, págs. 6 a 31 y 73 a 94.

(⁵) Por vía de ilustración, y sin que se entienda que el Tribunal expresa un criterio propio, cabe observar que a la luz de la versión de 1946 de la Regla 60(*b*) federal, que en lo ahora pertinente es igual a la Regla 49.2 nuestra a partir de 1958, la situación presentaría el siguiente cuadro: En el informe de 1945 del Comité Consultivo que preparó las enmiendas de 1946, 28 U.S.C.A. *Rules*, pág. 312, se hizo constar que el pronombre calificador *"su"* (ante, escolio 4) se había eliminado sobre la base de que era muy restrictivo, y que la subdivisión (*b*) debía incluir el error o negligencia *"de otros"* que pueda ser de igual manera pertinente, y necesitar de igual manera de la jurisdicción supervisora, como en aquellos casos en que la sentencia se da contra la parte por *su* error, inadvertencia, etc. A la luz de este informe y del cambio operado Moore expone que se puede conceder un remedio bajo este inciso después de la enmienda de 1946 tanto por el error de la parte promovente como por el error, inadvertencia, etc. de otras partes en el pleito, del secretario y *hasta* de la corte. Vol. 7, pág. 230. Más adelante, refiriéndose específicamente al remedio contra un error judicial (págs. 235 a 238), Moore se pregunta si esta expansión de la Regla 60(*b*)(1) permite que se conceda el remedio contra un error sustantivo de derecho incurrido por la corte, y se inclina a creer que sí, aunque admite que el punto no está libre de dudas y que hay

*Por las razones anteriormente expuestas, se anula la resolución dictada por la Sala de San Juan del Tribunal Superior en 19 de marzo de 1957 según fue restablecida por la de 23 de agosto de dicho año, y se devuelve el caso al tribunal de instancia para ulteriores procedimientos no incompatibles con esta opinión.*

El Juez Presidente Sr. Negrón Fernández no tomó parte en la discusión ni en la decisión de este caso.

---

autoridades en contrario, como en efecto así es. Observa el tratadista que la Regla 60(*b*) por disposición expresa no afecta la finalidad de la sentencia, ni suspende sus efectos, y por ende, no opera directamente para arrastrar el término de apelación; y que si se interpretara la regla como que releva de la sentencia a base de un error judicial siendo apelable el fallo que se emita sobre la moción, el término para apelar quedaría indirectamente prorrogado. Cree, no obstante, que se puede dar un remedio bajo la Regla 60(*b*)(1), *siempre y cuando* que la moción se presente dentro de un término *razonable*. Considerando los precedentes históricos en torno a los antiguos remedios auxiliares que luego se encarnaron en la regla, y el principio de derecho de orden ya axiomático de que ni esos remedios históricos ni la regla misma se han considerado como un sustituto del remedio de apelación, o para extender indirectamente el término para apelar véanse: *Providencial Development Co.* v. *United States Steel*, 236 F.2d 277, pág. 281; *Title* v. *United States*, 263 F.2d 28, pág. 29; *cert. denegado* 359 U.S. 989; *Elgin National Watch Co.* v. *Barrett*, 213 F.2d 776, pág. 780; *American Nat. Bank & Trust Co.* v. *Taussig*, 255 F.2d 765, pág. 767; *cert. denegado* 358 U.S. 883; *Collins* v. *City of Wichita, Kansas*, 254 F.2d 837, pág. 839; *Annat* v. *Beard*, 277 F.2d 554, pág. 559; *Perrin* v. *Aluminum Co. of America*, 197 F. 2d 254, pág. 255; y véase en analogía *Jusino* v. *Morales y Tió*, (C.A.1) 139 F.2d. 946, pág. 947, Moore concluye que el término *razonable* en tal caso no debe exceder el tiempo permitido para interponer apelación. Así, observa el comentarista, ni se viola el principio de la finalidad, ni el remedio operaría como un sustituto de la apelación. Entre los antiguos remedios auxiliares que sirvieron de fondo histórico a la Regla 60(*b*)(1) está el auto equitativo de revisión (ante el propio tribunal sentenciador *Bill of review*), para revisar errores de ley. Este auto procedía sólo después de vencer el término para pedir una reconsideración de la sentencia, que podía ser tanto por error de hecho como de derecho, y antes de expirar el término para apelar. Vol. 7, págs. 53 a 61; Vol. 3, (1938), págs. 3527 et seq. Sugiere Moore que en tales casos se apele en tiempo aunque se pida acción bajo la regla, solicitándose entonces permiso del tribunal de apelación para que el de instancia considere el remedio. (Véase en este sentido el procedimiento provisto en nuestra Regla 49.2 de 1958).