ARTHUR EISELE, demandante y recurrente, *v.* CARMEN ORCASITAS, demandada y recurrida.

*Número:* 565   *Resuelto:* 26 de marzo de 1962

90

*José T. Marrero Rivera,* abogado del recurrente; *Jorge Benítez Gautier,* abogado de la recurrida.

Sala integrada por el Juez Asociado Señor Hernández Matos como Presidente Accidental de Sala y los Jueces Asociados Señores Santana Becerra y Blanco Lugo.

PER CURIAM: Este recurso envuelve la misma sentencia que en otro aspecto confirmamos en 8 de enero de 1962 en el recurso *564* traído por la casera. 84 D.P.R. 360 (1962). En éste solicitó revisión el inquilino de aquella parte del fallo en que la Sala sentenciadora concluyó que: "Habiendo transcurrido más de un año de haberse pagado el último sobreprecio a la fecha de la radicación de la demanda, la causa de acción de triple daño está prescrita; mejor dicho, ha caducado." Resolvió la Sala que el término de un año para radicar la demanda de triple daño es un plazo sustantivo y no está sujeto a ser interrumpido por una reclamación extrajudicial.

El Art. 8(a) de la Ley de Alquileres Razonables, Ley 464 de 25 de abril de 1946 según ha sido enmendada,—17 LPRA (ed 1961) sec. 188(a)—obliga al casero a devolver al inquilino cualquier alquiler cobrado en exceso del máximo dentro de los 30 días de ser requerido por el inquilino o por el Administrador, y si transcurren dichos 30 días sin que el casero haya efectuado el reembolso, el inquilino puede incoar una acción contra el propietario por tres veces el importe de dicho reembolso.—Art. 8(d). El apartado (h) del mismo Art. 8 dispone que las acciones de triple daño así autorizadas pueden incoarse solamente dentro del año siguiente a la fecha en que se hubiera pagado el sobreprecio o a la fecha en que se ordenare por el Administrador una reducción de alquiler incluyendo reembolso al inquilino, según fuere el caso. No está aquí envuelta la segunda modalidad.

De acuerdo con los hechos estipulados la casera cobró un sobreprecio de $22 mensuales desde el 1ro. de septiembre de 1953 hasta el 31 de agosto de 1955. En 23 de enero de 1956 el inquilino radicó una querella ante la Administración de Estabilización Económica contra dichos cánones. En 14 de abril de 1956 el inquilino requirió directamente a la casera el reembolso de lo pagado en exceso. ■

La acción en corte se comenzó el 22 de diciembre de 1956 demandándose el pago de triple daño cubriendo las 24 mensualidades en que se pagó en exceso. A la fecha en que se interpuso la demanda habían transcurrido 3 años, 3 meses y 22 días desde que se pagara el primer sobreprecio, y 1 año, 3 meses y 22 días desde el pago del último. El inquilino sostiene, sin embargo, que él interrumpió el término porque en 23 de enero de 1956 radicó una querella ante el Administrador contra esos cánones y en abril 14 requirió a la casera su devolución. De haber habido una interrupción en derecho, ello hubiera interrumpido a lo sumo el período de un año en cuanto a los sobreprecios pagados dentro de los doce meses inmediatamente anteriores a diciembre 22, 1956 cuando se interpuso la demanda. No en cuanto a todos los demás sobreprecios cobrados. Además, de haber quedado interrumpido el año por el requerimiento del inquilino de 14 de abril, no habría afectado la acción de daño triple ya que por ley dicho requerimiento se refiere a la *devolución* del exceso. El hecho de que el Art. 8 en sus apartados (a) y (d) exija tal requerimiento previo para acudir a la acción judicial, no altera lo dispuesto en el apartado (h) en cuanto al tiempo en que la de daño triple deba ser incoada. Ya resolvimos en el *recurso 564* que el período de un año del apartado (h) no se aplica a la reclamación para la mera devolución de un exceso pagado. ■

En derecho, convenimos con la Sala sentenciadora en que el período de un año que estatuye el apartado (h) del Art. 8 no admite interrupción extrajudicial. Se refiere dicho perío-

do a una causa de acción especial de naturaleza punitiva, según explicamos en el caso de *Peñagarícano y Nadal Skerret,* 81 D.P.R. 877, y en otros posteriores, concedida por el Legis-. lador con el requisito de que sólo se puede entablar dentro del año del pago del sobreprecio que da lugar a la misma. Se trata de un término de caducidad de un derecho sustantivo, no de la prescripción corriente de una acción judicial que admite los actos de interrupción de la misma que dispone el Código Civil. ▪

La prescripción extintiva según la expone Santamaría [1] "es el instituto por el que a virtud de una presunción legal de abandono, derivada del hecho del transcurso de un tiempo determinado sin reclamar un derecho, se tiene por extinguida la acción para reclamarlo." Más adelante, comparando la prescripción con la caducidad expresa:

"La caducidad o decadencia de los derechos no debe confundirse con la prescripción, aunque en determinados casos sea difícil establecer una distinción neta entre ellas.

"La caducidad tiene lugar, dice Castán (1,860) en términos análogos a Coviello (535), cuando la ley o la voluntad de los particulares han señalado un término fijo para la duración de un derecho, de tal modo que transcurrido este término, no puede ya ser ejercitado. El criterio diferencial entre ambos institutos, prescripción y decadencia, no resulta muy claro, expresa Barassi (647), pero puede decirse que cuando la ley ha establecido que un determinado acto, que representa la actuación de un derecho, sea ejercitado dentro de un tiempo dado, este término es el punto de partida de la extinción del derecho en la caducidad, a diferencia de la prescripción, en que se parte del hecho de la falta de ejercicio del derecho.

"Una vez ejercitado el derecho en tiempo, queda evitada la caducidad, pero el sujeto puede luego perderlo por la prescripción si su ejercicio quedó paralizado durante el tiempo preciso para ello. (Messineo, 1, 195.)

---

[1] José Luis Santamaría, Comentarios al Código Civil (1958) Tomo 2, pág. 1012.

"En cuanto a su eficacia la decadencia, contrariamente a lo indicado antes para la prescripción, ha de estimarse *ex officio Judicis*, pues constituye un presupuesto negativo del derecho; y no se interrumpe, porque no está basada en la presunción de abandono del derecho.

"La prescripción y la caducidad que, no bien definidas legalmente, producen, por responder a igual presunción de abandono, el mismo efecto extintivo y tienen la común finalidad de impedir que permanezcan indefinidamente inciertos los derechos, ofrecen, como nota que de modo acusado las distingue, la de que mientras la prescripción es renunciable, por lo que sólo cuando se alega puede ser estimada, la caducidad opera por sí misma, obligando al juzgador a declararla de oficio, según se ha declarado entre otras sentencias en la de 30 abril 1940 (S. 7 diciembre 1943). Y no tratándose de un término de prescripción propiamente dicha, sino de un plazo preclusivo o de caducidad, no cabe aplicar la doctrina relativa a los diferentes modos de interrumpir la prescripción de las acciones. (S. 10 marzo 1942.)

"Si bien es cierto que en el Código Civil no existe la debida distinción entre caducidad y prescripción, también lo es que la doctrina jurisprudencial las viene diferenciando, entendiendo (SS. 27 abril 1940 y 25 septiembre 1950) que cuando se otorga un tiempo determinado para el ejercicio del derecho, se está en presencia de un plazo de caducidad, pasado el cual el derecho deja de existir, y así debe ser proclamado de oficio, mientras que por el contrario, la prescripción hace referencia tan sólo a las pretensiones que las partes puedan deducir, no a los derechos que les afectan, quedando éstos sólo paralizados mediante la excepción que se promueve y que sólo cabe admitir cuando la parte expresamente la articula. (S. 5 julio 1957.)" ■

Puig Peña, en la enumeración que hace distinguiendo la caducidad o decadencia de la prescripción menciona, entre otras distinciones, que la finalidad de la caducidad o decadencia es fijar de antemano el tiempo durante el cual únicamente un derecho puede ser ejecutado, y que en la decadencia, distinto a la prescripción, no hay interrupción porque el efecto extintivo es radical y automático; que la prescripción sólo la

hace valer la parte, la decadencia impide el nacimiento del mismo derecho y la hace valer el Juez *ex officio*.(²)  █

Los tribunales americanos se pronunciaron también en el sentido de que el término de 1 año para incoar la acción líquida por tres veces el sobreprecio cobrado bajo la legislación federal de inquilinato era parte de la causa de acción sustantiva, lo que nuestros tratadistas han llamado un período de caducidad o decadencia.  Cf: *Vargas* v. *Sánchez*, 79 D.P.R. 801.

*Se confirmará la sentencia recurrida también en lo que respecta a este recurso.*

---

(²) *Tratado de Derecho Civil Español* (1958) Tomo 1, Vol. 11, págs. 453-455.  También: Espín Cánovas, *Manual de Derecho Civil Español* (1951) Vol. 1, pág. 262; Jorge Llambías, *Derecho Civil* (1958) Tomo II, págs. 520-523.  Enneccerus, *Tratado de Derecho Civil* (1935) Vol. II, págs. 489-493.